# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3266

_____

| | | |
|---|---|---|
| Joseph Myers Bropleh, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Alberto Gonzales,* Attorney General of | * | |
| the United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted:  September 13, 2005
Filed:  November 10, 2005

_____

Before MELLOY, LAY, and BENTON, Circuit Judges.

_____

LAY, Circuit Judge.

Appellant Joseph Myers Bropleh, a 37 year-old native of Liberia, has resided in the United States since 1989.  In November 2000, Bropleh was found removable. He then applied for asylum, withholding of removal, Convention Against Torture (CAT) relief, and cancellation of removal.  In the alternative, Bropleh sought voluntary departure.  After a removal hearing was held, the immigration judge (IJ)

_____

*Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

denied Bropleh's application for relief. The IJ did, however, allow Bropleh to depart voluntarily. Bropleh appealed to the Board of Immigration Appeals (BIA), which affirmed the IJ's decision without opinion. Bropleh now appeals to this court. We affirm.

## I.

In 1989, Bropleh left Liberia by ship and entered the United States without valid entry documents. He now lives in Minnesota, where he has worked as a nursing assistant since 1993. He has filed tax returns since 1992. Bropleh is married to a United States citizen, but is separated from her. Bropleh's brother was granted asylum in the United States in 1996. Bropleh's teenage daughter lawfully emigrated to the United States in 1998 and lives in Minnesota with her mother and her mother's husband. Bropleh has five other children who live in Liberia.

At his removal hearing, Bropleh testified that during the 1980s he was active in student groups that protested against the Liberian government. He stated he wrote pamphlets criticizing Charles Taylor for his role in the Liberian government's corruption. Bropleh's testimony regarding when he wrote the anti-Taylor pamphlets was not consistent, however. At one point in his testimony he stated he wrote pamphlets in 1984, but later asserted he wrote the pamphlets in either 1986 or 1987. Bropleh also stated that he was imprisoned and tortured by the Liberian government in 1986 and 1987, and that in 1988 the government burned down his home.

Bropleh testified that if he returns to Liberia, he will be mistreated and possibly killed by the government because he criticized Charles Taylor in the 1980s and has continued his opposition to the Liberian government through his membership in the Organization of Liberians in Minnesota. He also stated that the Liberian government knows his brother received asylum in the United States, a fact Bropleh believes increases the chance he will be abused if he returns.

At his immigration hearing, Bropleh introduced several documents as evidence. First, he offered what he stated was the original copy of a memorandum from Liberia's Ministry of Foreign Affairs stating he had committed treason against the government of President Charles Taylor. The document is dated 1994. Taylor, however, did not become president until 1997. When pressed during his testimony at the hearing, Bropleh insisted he could produce the envelope the memorandum came in. When the hearing was continued, Bropleh produced an envelope from Liberia's Ministry of Finance—not the Ministry of Foreign Affairs. Bropleh insisted the memorandum he presented to the court had arrived in this envelope. When it was pointed out to him that the "original" he had presented had never been folded and thus could not have fit into the envelope he provided, Bropleh adjusted his story and stated that the document was actually a photocopy of the original. He then testified that he did not know where the original was. Bropleh also presented a copy of his passport, which he claimed was partially burned in a house fire set by the Liberian government in 1988. Bropleh did not present any physical evidence corroborating his political activities in Liberia or the United States. In light of the evidence presented, the IJ concluded that Bropleh lacked credibility and ordered Bropleh's voluntary removal.

## II.

When the BIA affirms an IJ's decision without opinion, we treat the judge's decision as the final agency decision. Amin v. Ashcroft, 388 F.3d 648, 650 (8th Cir. 2004). To obtain judicial reversal of the BIA's determination, a petitioner seeking asylum must show that "the evidence he [or she] presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Id. A BIA finding of fact is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This court defers to an IJ's credibility determinations "where the finding is supported by a specific, cogent reason for disbelief." Nyama v. Ashcroft, 357 F.3d 812, 817 (8th Cir. 2004) (per curiam) (quotation and citation omitted).

Under § 208 of the Immigration and Nationality Act (INA), the Secretary of Homeland Security or Attorney General has the discretion to grant asylum to refugees. A refugee is defined as one who can prove that he or she is unwilling or unable to return to his or her home country because of past persecution or because there is a well-founded fear of future persecution because of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C.§ 1101(a)(42)(A). The Attorney General must withhold removal "if [he] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §1231(b)(3). To succeed on a withholding of removal claim, an alien must establish by a "clear probability" that his life or freedom would be threatened in the country to which he is to be deported. INS v. Stevic, 467 U.S. 407, 429-30 (1984). In order to receive CAT relief Bropleh bears the burden of showing "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

### III.

The IJ denied Bropleh's application for asylum, withholding of removal, and CAT relief based on the "overall lack of credibility of the evidence presented." The IJ based his credibility determination on the inconsistencies in Bropleh's testimony and the IJ's conclusion that Bropleh had altered his passport and presented a fraudulent document to the court. The document the IJ concluded was fraudulent was a memorandum purportedly issued by the Liberian Foreign Ministry. Dated in 1994, the memorandum listed Bropleh as one among a small number of men guilty of treason against the government of "President Charles Taylor." The IJ observed, however, that Taylor did not become president of Liberia until 1997. The IJ also stated it was "implausible" that Bropleh's name would appear on a list of notable opponents of Charles Taylor when Bropleh claimed only to have authored a pamphlet

-4-

against Taylor in the mid-1980s when he was in high school or college. The IJ observed that Bropleh's testimony about the pamphlet lacked credibility because Bropleh claimed the pamphlet criticized Charles Taylor's corrupting role in the government during the mid-1980s. In fact, Taylor left Liberia in 1983, when Bropleh was fifteen. Further, the IJ noted that the envelope Bropleh testified the memorandum had arrived in was too small to have held the unfolded document Bropleh presented to the court as an original. In conclusion, the IJ stated "[w]hen a document such as this is fabricated and present[ed] to the Court, it goes to the entirety of the respondent's credibility on all of his claims for relief." See Akinmade v. I.N.S., 196 F.3d 951, 955-56 (9th Cir. 1999) (favorably citing In re O-D-, 21 I&N Decisions 1079, 1083 (BIA 1998) (stating respondent's presentation "of at least one counterfeit document, and probably two, submitted to prove a central element in an asylum adjudication, indicates his lack of credibility")).

Bropleh asserts the IJ made five errors in denying his asylum, withholding of removal, and CAT claims. First, Bropleh argues that the denial of his asylum application violated his right to due process because his brother, James Bropleh, was granted asylum in 1996 under similar circumstances. According to Bropleh, the two brothers' applications were "nearly identical," and it is "inconsistent as a matter of law" for two brothers to receive disparate and inconsistent results. The record indicates, however, that the IJ concluded the two brothers' applications were not "nearly identical." James Bropleh's immigration proceeding files were entered into evidence in the case at hand, and the IJ had the opportunity to compare the two cases when making his decision. James Bropleh's application for asylum apparently was not marred by the credibility problems in his brother's application, and therefore the two cannot be meaningfully compared. Accordingly, Bropleh's claim that the denial of his asylum claim was "inconsistent as a matter of law" is without merit.

Next, Bropleh asserts that the IJ placed "undue emphasis" on the Ministry of Foreign Affairs memorandum. However, the memorandum was the key piece of

-5-

evidence submitted by Bropleh to support his application. As such, the IJ properly concluded that the fraudulent nature of the letter significantly undermined Bropleh's credibility.

The third argument Bropleh makes rests on his assertion that the immigration judge improperly acted as a "forensic document examiner" when he concluded that Bropleh had altered his passport to conceal the fact that he had been denied a visa to the United States. The IJ observed that the burn-marks on Bropleh's passport were "spectacularly inconsistent," thereby indicating that Bropleh had tampered with it. Bropleh argues that the judge was not qualified to render an opinion regarding the physical state of the passport, and that "it was improper for the judge to speculate and to undertake such an examination on his own accord." We conclude, however, that the judge's findings did not require a forensic expert. Bropleh himself testified that the marks on his passport were caused by a house fire. Thus, no forensic examination was needed to determine that a fire caused the marks. The judge stated he had reviewed "hundreds" of passports, and was familiar with the precise place a stamp concerning a visa application would be placed. Given Bropleh's testimony that he had not applied for a visa to the United States, a forensic expert was not required to find it suspicious that the passport had been selectively burned in the area where evidence of an application would be found. Accordingly, the record indicates the judge made reasonable inferences from the evidence presented in concluding that the passport had been purposefully altered and that this reflected adversely upon Bropleh's credibility.

Bropleh next argues that the judge erred when he stated that, despite Bropleh's significant credibility problems, he would have been willing to consider the validity of his claim if he had presented "some legitimate objective corroboration" regarding his claims of political activism in Liberia. The judge stated that Bropleh "made no effort whatsoever" to gather corroborating evidence from sources in Liberia. On appeal, Bropleh asserts that this statement reflects that the judge "held [Bropleh] to a standard of proof which is not required in asylum cases." "[T]he weaker an alien's

testimony, the greater the need for corroborating testimony." <u>Mohamed v. Ashcroft</u>, 396 F.3d 999, 1005 (8th Cir. 2005) (quoting <u>In re Y-B-</u>, 21 I&N Dec. 1136, 1139 (BIA 1998)). In this case, the IJ concluded that Bropleh submitted a fraudulent document, altered his passport, and gave inconsistent testimony. Thus, the IJ's observation that Bropleh had failed to present any corroborating evidence of his claims simply underscored the weakness of Bropleh's case. <u>See</u> <u>Nyama</u>, 357 F.3d at 817 (stating the IJ did not err in demanding additional corroborating evidence where the petitioner's asylum narrative was not credible).

Finally, Bropleh argues that, in denying CAT relief, the IJ failed to consider Bropleh's testimony regarding the severe mistreatment he received the two times he was allegedly confined by the Liberian government. The immigration judge concluded, however, that Bropleh did not show the likelihood of torture, as his testimony failed to credibly support the incidents of past harm and the risk of future harm.

Our court must defer to the BIA's credibility findings where they are supported by specific, cogent reasons. <u>Id.</u> In this case, the IJ presented detailed reasons for concluding that Bropleh lacked credibility. Accordingly, we hold that Bropleh's arguments that the IJ erred in denying his asylum, withholding of removal, and CAT relief applications are without merit.

**IV.**

We now turn to Bropleh's argument that, if we uphold the Board's denial of Bropleh's asylum and torture convention claims, we should reverse the Board's conclusion that he is not entitled to a cancellation of removal under INA § 240A(b). However, INA § 242(a)(2)(B)(i) precludes judicial review of discretionary denials of cancellation of removal: "Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of relief

under section . . . 240A." See Halabi v. Ashcroft, 316 F.3d 807, 808 (8th Cir. 2003) (per curiam) (stating the INA "expressly states that denials of discretionary relief . . . are not subject to review by the courts"). Thus, this court lacks subject matter jurisdiction to address the IJ's denial of Bropleh's cancellation of removal application.

## V.

We next address Bropleh's argument that, because the immigration judge erred by failing to rule on his adjustment application, his case should be remanded in order for the judge to complete the hearing and rule on the application. In 1998, Bropleh filed an Application to Adjust Status, which was denied by the INS. At Bropleh's final removal hearing in 2003, the following exchange took place:

| IJ: | And before we went on the record today, Mr. Thal, you said he would not be pursuing adjustment? |
| Counsel: | Right. Basically, Your Honor, we're not going to withdraw it, but his wife is not here to support the application, so we're just going to proceed to provide the evidence and testimony in support of the asylum application and the cancellation of removal application. |
| IJ: | All right. Well, you're not withdrawing it, but what are you doing? That the question[.] |
| Counsel: | We just won't fight anything in further support of it. |
| IJ: | So— |
| Counsel: | I guess you'll have to rule it— |
| IJ: | Without evidence. |
| Counsel: | Without evidence. |

In his appeal to this court, Bropleh emphasizes that he expressly stated he was not withdrawing his application for adjustment. However, Bropleh's statement that he had no evidence to present in support of the application warrants equal emphasis. We conclude that Bropleh—by choosing not to present any evidence in support of his adjustment application—effectively abandoned that application. Thus, the IJ did not err in failing to rule on the application.

## VI.

Finally, we address Bropleh's argument that the Board of Immigration Appeals erred in its decision not to refer Bropleh's appeal to a three-member panel. Bropleh asserts that review by a three-member panel is required if there is "a need to establish a precedent construing the meaning of laws, regulations or procedures." See 8 C.F.R. § 1003.1(e)(6). However, this court lacks jurisdiction to review the discretionary determination of the Board to affirm without opinion. See Ngure v. Ashcroft, 367 F.3d 975, 982 (8th Cir. 2004)(stating that "the BIA's decision whether to employ the [affirmance without opinion] procedure in a particular case is committed to agency discretion and is not subject to judicial review").

AFFIRMED.

_____