**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAO LU LIN,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 04-70422

Agency No.
A79-760-825

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 18, 2005—Honolulu, Hawaii

Filed January 12, 2006

Before: Michael Daly Hawkins, M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge McKeown

## COUNSEL

Benjamin V. Chen, Benjamin V. Chen, AAL, LLLC, Honolulu, Hawaii, for appellant Dao Lu Lin.

William C. Minick and Barry J. Pettinato, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for appellee Alberto R. Gonzales, Attorney General.

## OPINION

McKEOWN, Circuit Judge:

The question we consider in this asylum case is the nature of evidence required to support an Immigration Judge's ("IJ") adverse credibility finding based on documentary evidence. We reiterate the longstanding principle that such an adverse credibility finding must be supported by substantial evidence. The IJ's speculation as to what an official document should look like, conjecture about the significance of the missing details in the document, and musings as to format of the document cannot be regarded as "reasonable, substantial, and probative evidence" required by the Supreme Court in *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

Here, the IJ denied Dao Lu Lin's ("Lin") asylum application not because she thought Lin lacked credibility or that Lin told an implausible story. Rather, the IJ denied the application because she was suspicious about the official documents submitted by Lin. We readily acknowledge that an IJ need not accept all documents as authentic nor credit documentary submissions without careful scrutiny. But the rejection must be premised on more than a guess or surmise. A review of this record reveals that the IJ's suspicions derive from nothing more than her personal and subjective view as to what the documents should look like. Without any objective support in

the record, these suspicions do not amount to substantial evidence. We grant the petition and remand to the Board of Immigration Appeals ("Board") for review of the IJ's discretionary denial of asylum.

## BACKGROUND

Lin is a native citizen of the People's Republic of China. While living in a rural area of a small island called Dongqiang Town in Pingtan County, China, Lin met his wife, Yu Lan Chen ("Chen"). Their relationship developed quickly and Chen unexpectedly became pregnant with their first child, which prompted the couple to consider getting married. Because Chen had not reached the legal age for marriage, Lin contacted a family friend at the marital registration office of Dongqiang Town to falsify Chen's age. As a result, the couple married and received a "Marriage Certificate."

After they were married, Lin and Chen had three children. Within a month after the birth of their first child, a girl, the family planning unit of Dongqiang Town assessed the couple a fine for having failed to obtain permission to conceive, otherwise known as an "unplanned birth." The town officials then detained Lin for seven days until his family was able to pay the fine.

Shortly thereafter, family planning officials required Chen to have an intrauterine device (IUD) and periodic gynecological examinations in accordance with local family planning regulations. Lin and Chen were unhappy with this turn of events as they wanted to have another child. To remedy the situation, the couple hired a private physician to remove the IUD, after which they remained in hiding with family members until their second child was born. This child was also a girl. Due to the stringent birthing laws and the couple's desire to have a boy, they gave the child to the midwife so that she could find adoptive parents. Lin later learned that the child was adopted by a rich couple in Beijing and that the child was

receiving an education. During this period, Chen missed her mandated gynecological examinations. In response, family planning officials confiscated the couple's furniture and detained Lin's mother for eighteen days.

While hiding out, Lin and Chen decided to have a third child with the hope that it would be a boy. This time they were successful. The couple returned to their home village, where they lived with Chen's family. Upon discovering their return and the "unplanned" baby boy, the family planning officials arrested Chen, forced her to have a sterilization procedure, and detained Lin for seven days. The family planning unit issued a "Family Planning Operation Certification" documenting Chen's sterilization and a "Notice of Fine," giving Lin's family seven days to pay a very substantial fine.

Without the ability to pay such a large fine, the couple fled the village with their two children, after which the family planning officials destroyed their home and furnishings. The family moved from place to place, trying to make a living. While working on a Taiwanese fishing vessel, Lin made his way to the United States. Lin was eventually arrested and turned over to United States immigration officials.

Lin applied for asylum, claiming that his wife was forcibly sterilized as a consequence of multiple violations of China's birthing laws. The IJ found that Lin's "testimony was consistent with his written application. The fact that he was consistent with his written application helps [Lin] establish that what he is saying is truthful." The IJ even gave Lin "the benefit of the doubt" as to his oral testimony.

However, the IJ found suspicious and discounted the probative value of three documents: (1) the Marriage Certificate issued by Pingtan County Dongqiang People's Government; (2) the Family Planning Operation Certification issued by the Pingtan County Family Planning Bureau documenting that Chen underwent a female sterilization operation; and (3) the

Notice of Fine from the Pingtan County Dongqiang Town People's Government for the unplanned birth of their son.

After reviewing and weighing this documentary evidence, particularly the Family Planning Operation Certification, the IJ denied Lin's asylum application, stating, "The Court is not convinced by this evidence that [Lin] has established that his wife was forcibly sterilized. The evidence taken as a totality does not appear credible." The IJ also denied, in the alternative, Lin's application as a matter of discretion because he had given his second child up for adoption at a time that the State Department reported that "conditions were not good for children in Chinese orphanages [and that] kidnapping and buying and selling of children persist[ed] in rural areas despite government efforts to prevent this." The IJ went on to state that "there does not seem to be any reason why [Lin and his wife] could not have kept that child and continued to live [with relatives], as they did, until their greatly desired son was born."

On appeal, the Board affirmed the IJ's denial of relief stating that "the inconsistencies and omissions in questionable documents submitted by [Lin] are specific, cogent reasons for the [IJ]'s final credibility finding." The Board did not address the IJ's discretionary denial of relief.

## ANALYSIS

In denying Lin's asylum application, the IJ observed that "[t]he crux of this case centers upon what happened to his wife as he described it. In short, he states that his wife was forcibly sterilized when local officials learned of the existence of the [unplanned births of his children]." The IJ correctly pinpointed the issue—if Lin can prove that his wife was forcibly sterilized, he is automatically eligible for asylum and withholding of removal. *See* 8 U.S.C. § 1101(a)(42); *Qu v. Gonzales*, 399 F.3d 1195, 1198-99, 1203 (9th Cir. 2005) (holding that "one who has suffered involuntary sterilization, either directly or because of the sterilization of a spouse, is

entitled, without more, to withholding of removal"); *He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir. 2003) (holding that a husband is "automatically eligible for asylum" based on his wife's involuntary sterilization).

## I.  ADVERSE CREDIBILITY DETERMINATION

To prove his claim, Lin submitted his application with supporting documentation and testified at the hearing. Nothing about his story was incredible or unbelievable. The IJ noted that the consistency between his application and testimony "helps . . . establish that what he is saying is truthful." The IJ did not, therefore, challenge Lin's application on the basis of some disbelief in Lin or his account of events. She focused on the documentary evidence and concluded that she was not convinced "that his wife was forcibly sterilized. The evidence taken as a totality does not appear credible."

**[1]** Although an IJ may deny an asylum application based on a finding that the documentary evidence is not credible, there are baseline requirements to sustain such a denial. For example, the adverse credibility finding must be supported by substantial evidence, which is satisfied if the IJ offers "a legitimate[,] articulable basis" for the finding and "a specific, cogent reason for any stated disbelief." *Wang v. INS*, 352 F.3d 1250, 1253 (9th Cir. 2003); *Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir. 2000). More specifically, an adverse credibility finding cannot rest on mere speculation or conjecture, such as the IJ's bare subjective opinion about the authenticity or probity of documents. *See Wang*, 352 F.3d at 1254; *Shah*, 220 F.3d at 1071. Rather, the record must include some "evidence undermining their reliability," such that a reviewing court can objectively verify whether the IJ has a legitimate basis to distrust the documents. *Wang*, 352 F.3d at 1254. Here, the IJ discounted the probative value of the Family Planing Operation Certification, the Marriage Certificate, and the Notice of Fine on the basis of speculation and conjecture and without support in the record. We address each document.

## A. Family Planning Operation Certification

The main target of the IJ's suspicions was the Family Planning Operation Certification, which documented Chen's forced sterilization. The IJ found this document "suspect because the resident identification number is blank. There is also no evidence that [Lin's] wife is employed and, therefore, it is difficult to see why she would have such a certification issued." The IJ went on to explain:

> But the Court's primary concern is that this is supposed to be an official document and yet her identification and even her birth date is not listed since the document simply states that she is 25 years old. . . . In conclusion, although there is some probative value for the family planning operation certification, the Court must find this probative value to be low since there has been no forensic analysis and the document itself is incomplete. The Department of State has in the past cautioned that at times documents from South China are not genuine.

[2] The difficulty with this analysis is that it rests on speculation as to what the document should look like and whether the absence of a few details renders a document suspect. Without some evidence in the record, other than the IJ's bare personal view, we have no way of knowing whether the IJ's suspicions are simply conjecture or legitimate concerns bearing on the reliability of the document. Here, as in *Wang*, "[t]he record does not furnish any evidence that . . . authentic Chinese sterilization records ordinarily supply the dates and other details omitted in [the petitioner's] document. While we understand the IJ's suspicion, her basis for questioning these documents 'amounts to nothing more than a subjective view of what these documents would look like.' " *Wang*, 352 F.3d at 1255 (quoting *Shah*, 220 F.3d at 1071) (internal editing marks omitted). Such a "non-evidence-based assumption can-

not support an adverse credibility determination." *Ge v. Ashcroft*, 367 F.3d 1121, 1126 (9th Cir. 2004).

We are not unsympathetic to the IJ's desire to discern the authenticity of this certification because it serves as a central piece of evidence. We also acknowledge the State Department's caution that at times documents from South China are not genuine. Nonetheless, these concerns do not obviate the need for actual evidence rather than personal speculation by the IJ.

We are also mindful that an IJ may develop an expertise by repetitive examination of particular documents or may develop familiarity with the document practices of certain foreign regions. We do not endeavor here to articulate the parameters of such expertise or the acceptable reach of judicial notice. It is sufficient to note that any such expertise should, at a minimum, be articulated on the record so that the reviewing court can be confident that the IJ's determinations are based on objective criteria particularized to the document.

The IJ was suspicious in part because the document "is supposed to be an official document" yet had missing details. To be sure, informality or incompleteness in an official document could indicate that it is a forgery. On the other hand, what if the document format is not atypical for the issuing agency, a local family planning bureau located on a small rural island in China?[1] It strains credulity, for example, to conclude that a document is untrustworthy simply because it lists a person's

---

[1]The Marriage Certificate and Notice of Fine were similarly discounted by the IJ for having missing details, such as the resident identification numbers. These documents were issued under the authority of the same local Pingtan County government. While speculation may lead one to conclude that the missing details are indicative of fraud, another inference is that these documents are genuine because they are consistent with one another, all missing similar details, and all issued by agencies under the same local county government. Nothing in the record, however, allows the IJ or a reviewing court to discern which inference is correct.

current age rather than their birth date. The reviewing court should not be in a position of speculating about the IJ's speculations.

The Eighth Circuit's decision in *Bropleh v. Gonzales*, 428 F.3d 772, 777 (8th Cir. 2005), illustrates how judicial experience combined with obvious warning signs of forgery, when articulated on the record, may satisfy the substantial evidence requirement. In *Bropleh*, the court upheld an IJ's determination that a passport had been purposefully altered to conceal the denial of a United States visa. The court noted that the record contained adequate support for this determination, including obvious burn marks on the passport in the area of the alteration and the IJ's expertise from reviewing hundreds of passports:

> The IJ observed that the burn-marks on Bropleh's passport were "spectacularly inconsistent," thereby indicating that Bropleh had tampered with it. . . . The judge stated he had reviewed "hundreds" of passports, and was familiar with the precise place a stamp concerning a visa application would be placed. Given Bropleh's testimony that he had not applied for a visa to the United States, a forensic expert was not required to find it suspicious that the passport had been selectively burned in the area where evidence of an application would be found. Accordingly, the record indicates the judge made reasonable inferences from the evidence presented in concluding that the passport had been purposefully altered and that this reflected adversely upon Bropleh's credibility.

*Id.*

**[3]** In contrast to the situation in *Bropleh*, the IJ in Lin's case did not indicate that the missing details were unusual or indicative of forgery based upon her review of numerous

Family Planning Operation Certifications or other documents from the Pingtan Family Planning Bureau. Nor did the IJ point to some other obvious discrepancy or indicia that would allow one to discredit the document based on logic or common sense. Although the burden of proof rests with the petitioner, the government did not put on a single witness or offer any evidence regarding the reliability of these documents or the document practices of the local issuing entities. In other words, "[t]here is no evidence in the record to indicate that the [document is] anything but what [it purports to be]." *Shah*, 220 F.3d at 1071.

**[4]** Our insistence on evidentiary support for a finding of lack of credibility with respect to an official document is in line with the views of our sister courts. For example, in *Chen v. U.S. Department of Justice*, 426 F.3d 104, 115 (2nd Cir. 2005), the Second Circuit held that the record was insufficient to support an IJ's adverse credibility findings concerning birth control certificates submitted by an asylum applicant. The IJ "found with regard to [the petitioner's] claim for relief under family planning that [his] presentation was not credible due to the documents that he had provided. In particular the IJ noted that the numbers on the birth control certificates that [the petitioner] submitted were out of sequence." *Id.* at 110 (internal quotation marks omitted). On appeal, the court held that this adverse credibility finding "was grounded solely on speculation and conjecture" and that the government did not create a record sufficient to support the IJ's adverse credibility finding. *Id.* at 115.

**[5]** The IJ's other bases for discounting the probative value of the certificate are similarly without support. One of the referenced deficiencies was that "there has been no forensic analysis." Our precedent on this point is clear: "[m]ere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute a sufficient foundation for an adverse credibility finding." *Wang*, 352 F.3d at 1254. It is difficult to imagine what the IJ meant by

her passing reference to the lack of forensic evidence. Surely an asylum applicant does not have an affirmative duty to have a document examiner authenticate every piece of documentary evidence. Indeed, the IJ did not conclude that the document was a forgery, and a forensic examiner could hardly address the IJ's real concern—lack of certain details. It is true that such an examination could be helpful in some situations to establish an applicant's claim (especially if there is objective evidence undermining the reliability of the document), but the failure to offer expert authentication of an official document cannot itself be the basis for reasonable suspicion. *Id.*

**[6]** The IJ also discredited the Family Planning Operation Certification because there was "no evidence that [Lin's] wife is employed and, therefore, it is difficult to see why she would have such a certification issued." This assertion is based on nothing more than the IJ's conjecture about the practices of the Pingtan Family Planning Bureau. *See Shah*, 220 F.3d at 1071.

**[7]** Finally, the IJ's reference to the generalized State Department report's warning of forgeries from South China is informative but not a sufficient basis to discredit the Family Planning Operation Certification, particularly since the State Department report was not tied to the circumstances of Lin's case. *See id.* at 1069; *Wang*, 352 F.3d at 1254. Although a State Department report on widespread forgery within a particular region may be part of the IJ's analysis, speculation that a document is unreliable merely because other documents from the same region have been forged in the past can hardly be regarded as substantial evidence.

### B. MARRIAGE CERTIFICATE AND NOTICE OF FINE

**[8]** The IJ's suspicions regarding the Marriage Certificate and Notice of Fine suffer from many of the same deficiencies as the Family Planning Operation Certification. As to the Marriage Certificate, the IJ stated that it was "not a very reli-

able piece of evidence" because "the couple's identity numbers are not listed."[2] Regarding the Notice of Fine, the IJ stated that it "does not give an address for the couple nor their registration numbers. In addition this notice is not on a preprinted form as is often seen such as the one on the family planning operation certification."

**[9]** Nothing in the record, other than the IJ's unsupported subjective view, suggests that the missing details or format of the documents are unusual or indicative of a trumped-up document. The corollary to the IJ's position is that if every item was filled in, then the document would appear authentic. This approach is, in fact, counterintuitive. Someone wanting to forge a document would likely want to make sure to dot every "i" and cross every "t"—or at least the equivalent in Chinese —to make the document appear as complete as possible. On the other hand, bureaucracy does not always yield perfect results, and it is equally likely that a document missing a few details is authentic and represents the reality of a clerk processing large numbers of documents. The point is that we do not know the answer to this quandary and speculation cannot be used to fill in the blanks.

**[10]** The condemnation of the Notice of Fine not being on a pre-printed form is a perfect illustration of conjecture with-

---

[2]The IJ also mentioned that the birth date listed for Lin's wife was inconsistent with another document. Lin explained that the Marriage Certificate contained an inaccurate date because his wife was below the legal age of marriage and thus the certificate needed to reflect an earlier date of birth. The IJ did not explain how this inconsistency could bear negatively on the crux of the asylum claim, i.e., the forced sterilization. Such a minor inconsistency, especially when adequately explained by the applicant, cannot form the basis of an adverse credibility determination. *Shah*, 220 F.3d at 1068 ("[W]e will not uphold an adverse credibility finding unless the IJ or BIA specifically explains the significance of the discrepancy or points to the petitioner's obvious evasiveness when asked about it. If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, [they] have no bearing on credibility.' ") (second alteration in original) (citation omitted).

out evidence. Because the Family Planning Operation Certification is on a pre-printed form, the IJ hypothesized that such a pre-printed form is expected for the Notice of Fine. Maybe, maybe not. That conclusion relies solely on the IJ's imagination of what a "fine" document would look like and, most likely, on an American-based view of government forms. Absent any evidence, how can one reasonably conclude that the fine would be on a standard form? The fine was issued by a rural authority and we have no way of divining from the record whether this type of document is typically preprinted in China generally, let alone in this rural venue. Nor did the IJ explain how her suspicions regarding these missing details reflected on the credibility of Lin's claim that his wife was forcibly sterilized. *See Shah*, 220 F.3d at 1068 ("[T]he IJ gave no specific indication as to why the discrepancy is significant. In fact, neither the IJ nor the BIA explained why Mrs. Shah would [include the discrepancy]. We cannot affirm the credibility determination on this basis.")

**[11]** Aggregating the suspicions as a "totality," to use the IJ's term, does not salvage the adverse credibility finding. Stacking one suspicion or conjecture on top of another simply extends but does not strengthen the flimsy house of cards. If one suspicion cannot meet the substantial evidence standard, two are no better. The record lacks "a legitimate articulable basis," such that we can verify the IJ's "specific, cogent reason for any stated disbelief." *Wang*, 352 F.3d at 1253.

## II.  DISCRETIONARY DENIAL OF ASYLUM

Lin also challenges the IJ's discretionary denial of asylum. Because this issue was not addressed by the Board, remand is appropriate. *INS v. Ventura*, 537 U.S. 12 (2002).[3]

---

[3]We recognize, as did the IJ, that "asylum is rarely denied as a matter of discretion. . . ." We also note that the grounds for her discretionary denial appear to suffer from the same sort of unsupported and unparticularized speculation discussed with regards to her adverse credibility finding. We remand to the Board, however, to consider the discretionary denial of asylum.

**PETITION GRANTED; REMANDED** to the Board to review the IJ's discretionary denial of asylum.