

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-2006

# Purveegiin v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-3797

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Purveegiin v. Atty Gen USA" (2006). *2006 Decisions.* Paper 807.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/807

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 04-3797 and 04-4712

———

BATSAIHAN PURVEEGIIN,

Petitioner

v.

ALBERTO R. GONZALES,*
Attorney General of the United States;
MICHAEL CHERTOFF,* Secretary of the
Department of Homeland Security;

Respondents

*Substituted pursuant to Fed. R. App. P. 43(c)

———

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A74 879 850)
Immigration Judge Walter A. Durling

———

Submitted Under Third Circuit LAR 34.1(a)
February 14, 2006

Before:  SCIRICA, *Chief Judge*, BARRY
and FISHER, *Circuit Judges*.

(Filed June 1, 2006)

Joseph C. Hohenstein
Orlow & Orlow
620 Chestnut Street, Suite 656
Philadelphia, PA  19106
        *Attorney for Petitioner*

Ethan B. Kanter
William C. Minick
Janice K. Redfern
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C.  20044
        *Attorneys for Respondents*

## OPINION OF THE COURT

FISHER, *Circuit Judge*.

The Board of Immigration Appeals, in a series of decisions over the course of several years, denied numerous requests by Batsaihan Purveegiin for withholding of removal under the Convention Against Torture (CAT).[1] Purveegiin claimed that, if deported to his native country of Mongolia, he would be imprisoned for outstanding student loan debts and his criticisms of the Communist Party, and that he would be denied essential medical treatment while detained. An immigration judge granted Purveegiin relief from removal, but the Board, acting through a single member, reversed.

Purveegiin now petitions for review. He asserts that the Board erred factually in discounting his allegations, legally in concluding that his imprisonment would not constitute torture, and procedurally in refusing to refer the case to a three-member panel for resolution. We agree with the last point, and will remand to the Board for further proceedings.

---

[1]Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), art. 3, *opened for signature* Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force June 26, 1987).

I.

A.

Purveegiin was working as an artist in communist Mongolia during the late 1980s when he came to the attention of the prime minister. The official admired his work, and became Purveegiin's patron. He helped Purveegiin to obtain a student visa and arranged for him to receive approximately $20,000 in government funds to attend art school in New York City. Purveegiin entered the United States in 1991 and commenced his studies later that year.

Things did not go as planned. He quit school in 1992, for reasons that are not clear from the record. He was diagnosed with diabetes in 1995, and placed on insulin treatment. He was convicted by New York authorities of petty larceny, criminal impersonation, and sexual abuse in 1995 and 1996. The prime minister who had been his patron was arrested and detained, and other Mongolian officials, now in power, informed Purveegiin that the $20,000 was a loan, not a grant, and must be repaid.

He sought support from the Mongolian consulate, but the results were decidedly negative. The chief consular official not only denied his request for additional funds but also threatened that, if Purveegiin did not pay back the money, he would be imprisoned. Purveegiin responded, perhaps unwisely, by criticizing the Communist Party, further angering the consular official.

4

B.

He fared no better with United States authorities. The Immigration and Naturalization Service charged Purveegiin in 1997 as an alien subject to deportation for failure to maintain the conditions of admission, 8 U.S.C. § 1227(a)(1)(C)(i), and for convictions of crimes involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(i), (ii). Purveegiin conceded removability, but sought withholding of removal under the CAT.[2]

1.

A hearing on the application for withholding of removal was held in October 1999. Purveegiin recounted his entry into the United States, his failed art studies, and his conflicts with Mongolian officials. He testified that he feared imprisonment if returned to Mongolia and argued, relying on country reports from the United States Department of State and Amnesty International, that he would be denied medical care if detained. He stressed that he required daily insulin injections and that, without treatment, he would die in a very short time.

The immigration judge granted withholding of removal. The judge found, based on Purveegiin's testimony and the

---

[2]Purveegiin had previously sought, and been denied, asylum and withholding of removal based on allegations that he would suffer persecution if returned to Mongolia. These claims are not relevant to disposition of the petition for review and need not be addressed here.

country reports, that Purveegiin more likely than not would be imprisoned upon his return to Mongolia, on account of his defaulted loan obligations and anti-communist comments, and would be deprived of necessary medical treatment while in detention. Moreover, the judge concluded that, because "government officials . . . know . . . of the abysmal conditions in the prison cells . . . and would [not] be ignorant of the severe pain to [Purveegiin] or any other prisoners," the pain and suffering caused to Purveegiin would be "specifically intended" by those officials.[3]

2.

The Board, acting through a single member, reversed. It disagreed with the immigration judge's findings that Purveegiin would be jailed upon his return to Mongolia and would be denied medical care. It stated, without elaboration, that "there is no convincing evidence that [Purveegiin] will be imprisoned or even briefly detained" if deported to Mongolia. The Board further concluded that "it is not established that [Purveegiin] would not be provided with medication in Mongolian prison facilities." It did not address the immigration judge's finding that any pain and suffering caused to Purveegiin in prison would be "specifically intended" by government officials.

---

[3]*See* 8 C.F.R. § 208.18(a)(5) ("In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering.").

Purveegiin filed a petition for review in this Court in July 2003. Soon thereafter, the government filed an unopposed motion to remand the case to the Board in light of *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir. 2003). We stated in *Zubeda* that an alien may be entitled to withholding of removal based on evidence showing that, if deported to her native country, she would be detained indefinitely and would likely be raped in prison. The panel recognized that detaining officials might not have the "specific intent" to inflict pain and suffering upon her, but determined that their knowledge of the conditions of detention could suffice to show that they "specifically intended" the harm that would likely occur. *Id.* at 473-74.[4] In a summary order, we granted the motion to remand in light of *Zubeda*.

3.

The Board, again acting through a single member, reaffirmed its reversal of the decision of the immigration judge. It admitted into the record new country reports from 2003,

---

[4]*See Zubeda*, 333 F.3d at 473 ("Although the regulations require that severe pain or suffering be 'intentionally inflicted,' we do not interpret this as a 'specific intent' requirement. Rather, we conclude that the Convention simply excludes severe pain or suffering that is the unintended consequence of an intentional act.") (internal citation omitted). *But see Auguste v. Ridge*, 395 F.3d 123, 148 (3d Cir. 2005) (holding that a showing of "specific intent" to cause severe pain and suffering is required to establish torture and rejecting as dicta contrary statements in *Zubeda*).

7

authored by the United States Department of State and Amnesty International. These documents contained "somewhat contradictory" accounts of prison conditions: both reported continued problems with excessive force and torture against prisoners and detainees but both also acknowledged that conditions were improving. The State Department report noted that Mongolian officials were reforming the prison system to monitor abuses and provide better medical care to inmates, and that hundreds of inmates with tuberculosis had received treatment.

The Board concluded that Purveegiin had not demonstrated, based on current country conditions, that he would be subject to torture if deported to Mongolia. It stated that Purveegiin's testimony, uncorroborated by evidence of "outstanding warrants for his arrest," was insufficient to establish that he would be imprisoned in Mongolia. It also found, based on the reports of improving prison conditions, that Purveegiin would likely receive adequate medical care even if he were detained. Again, the Board did not address the "specific intent" element of the torture claim.

4.

In September 2004, Purveegiin filed a timely petition for review with this Court and a motion for reconsideration with the Board. He criticized the Board for "fail[ing] to adequately consider the impact of *Zubeda*." He also asserted that reversal of the immigration judge's decision by a single member of the Board, as opposed to a three-member panel, was improper under agency regulations.

8

A single member of the Board denied the motion for reconsideration. The summary order discounted Purveegiin's arguments relating to *Zubeda*, concluding that the Board had conducted the review required by *Zubeda* but had determined, as a factual matter, that Purveegiin would not be subject to "severe pain and suffering" in Mongolia. It simply rejected, without explanation, Purveegiin's demand for three-member review.

Another timely petition for review followed. We consolidated this petition with the one filed from the order of the Board in September 2004.[5]

## II.

The Department of Justice has in recent years promulgated a series of regulations aimed at decreasing the backlog of pending immigration cases. Perhaps the most well known of these efforts are the streamlining regulations that went into effect in 1999. They allowed, for the first time, a single member of the Board to affirm a decision of an immigration judge without written opinion, if the decision was "squarely

---

[5]Following consolidation, Purveegiin filed a motion to supplement the record with four newspaper articles from May and June 2005. These articles report that the Communist Party has won control of Mongolia in recent elections and quote a United Nations official as stating that torture still occurs in Mongolian prisons and pre-trial detention facilities, particularly against inmates on death row.

controlled" by existing precedent. *See Dia v. Ashcroft*, 353 F.3d 228, 235 (3d Cir. 2003) (en banc). These provisions, now codified at 8 C.F.R. § 1003.1(e)(4), have been subject to criticism by courts and commentators, *see, e.g.*, *Berishaj v. Ashcroft*, 378 F.3d 314, 331 (3d Cir. 2004); Evelyn H. Cruz, *Double the Injustice, Twice the Harm: The Impact of the Board of Immigration Appeals's Summary Affirmance Procedures*, 16 Stan. L. & Pol'y Rev. 481, 505-08 (2005),[6] but have been lauded by the agency as an effective and adequate means to resolve simple cases in an expeditious manner, *see* Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878, 54,885 (Aug. 26, 2002) ("The Department believes that the Board's experience with the streamlining initiative has proven that fears of procedural failures or substantive errors being overlooked are not well founded.").

Other regulations, promulgated in 2002, further expanded the authority of a single member of the Board to resolve appeals. *Id.* Codified at 8 C.F.R. § 1003.1(e)(5), they provide that all cases will be reviewed in the first instance by a single Board member:

---

[6]*See also* Dorsey & Whitney LLP, Board of Immigration Appeals: Procedural Reforms To Improve Case Management 40-47 (July 22, 2003) (unpublished study, submitted to the American Bar Association on Immigration Policy, Practice and Pro Bono), *available at* http://www.dorsey.com/files/upload/ DorseyStudyABA_8mgPDF.pdf.

> If the Board member to whom an appeal is assigned determines, upon consideration of the merits, that the decision is not appropriate for affirmance without opinion, the Board member shall issue a brief order affirming, modifying, or remanding the decision under review, unless the Board member designates the case for decision by a three-member panel under paragraph (e)(6) of this section . . . . A single Board member may reverse the decision under review if such reversal is plainly consistent with and required by intervening Board or judicial precedent, by an intervening Act of Congress, or by an intervening final regulation.

*Id.* This provision expresses a preference in favor of single-member adjudication for the majority of cases. *See* Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 54,879.

Only in certain circumstances, enumerated in paragraph (e)(6) of 8 C.F.R. § 1003.1, do the regulations provide for referral of a case to a three-member panel:

> Cases may only be assigned for review by a three-member panel if the case presents one of these circumstances:
>
> (i) The need to settle inconsistencies among the rulings of different immigration judges;

11

(ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;

(iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;

(iv) The need to resolve a case or controversy of major national import;

(v) The need to review a clearly erroneous factual determination by an immigration judge; or

(vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

8 C.F.R. § 1003.1(e)(6). A case should be referred to a panel only if the legal and factual issues are in reasonable dispute or the case is of exceptional importance. *See id.*; *see also* Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 54,879-88.

These regulations, Purveegiin argues, required the Board to refer his case for three-member review. There are two questions that must be addressed in resolving this issue. Initially, we must determine whether the decision to employ single-member review is "committed to agency discretion," such

12

that we lack jurisdiction to consider the matter. If it is not, then we must address whether the Board's invocation of the procedure in this case was arbitrary or capricious.

A.

Under the Administrative Procedure Act, any "person suffering legal wrong because of agency action . . . is entitled to judicial review." 5 U.S.C. § 702; *see also id.* §§ 701(b)(1), 704. There are only two exceptions to this general rule: (1) when a statute precludes judicial review of the action, and (2) when the action is "committed to agency discretion by law." *Id.* § 701(a). No statute proscribes judicial review of the Board's decision to employ single-member review, so the only question here is whether the matter is "committed to agency discretion." *See id.*; *Smriko v. Ashcroft*, 387 F.3d 279, 291-92 (3d Cir. 2004).

An action is considered to be within an agency's absolute discretion, and not subject to judicial review, if the relevant statute or regulation "is drawn so that a court would have no meaningful standard against which to judge the agency's [action]." *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Only if the governing provisions affirmatively circumscribe the agency's authority, constraining its decision in a definite and defined manner, may a court competently assess the validity of its action. *See id.*; *see also Smriko*, 387 F.3d at 292.

A strict reading of 8 C.F.R. § 1003.1 arguably suggests that the decision to employ single-member review is a matter "committed to agency discretion." Paragraph (e)(5) lists cases

13

in which an appeal "shall" be decided by a single member, and paragraph (e)(6) lists cases in which an appeal "may" be referred to a three-member panel. *Id.* Notably, neither of these provisions states that a single member "shall not" decide a particular case, even if he or she determines that it falls within one of the categories of paragraph (e)(6). Nor do they state that a single member's decision to resolve a case without panel review might "violate" these standards. The regulations are phrased as permissive, allowing – but not mandating – three-member review in certain circumstances, in the discretion of the Board.

Nevertheless, the structure of the regulations and their history make clear that they impose affirmative limits on the authority of a single member to decide an appeal. The first sentence of paragraph (e)(5) of 8 C.F.R. § 1003.1 states: "[T]he Board member to whom an appeal is assigned . . . shall issue a brief order affirming, modifying, or remanding the decision . . . *unless* the Board member designates the case for decision by a three-member panel under paragraph (e)(6) of this section." *Id.* § 1003.1(e)(5) (emphasis added). By directing that a single member "shall" resolve a case "unless" it falls within the categories of paragraph (e)(6), the provision necessarily implies that a single member "shall not" resolve a case if it does fall within one of those categories. A member who determines that a case qualifies for referral under paragraph (e)(6) should refrain from decision and, instead, assign the matter to a three-member panel. *See id.* § 1003.1(e)(5), (6).

A contrary view would render these provisions largely superfluous. A Board member's determination that a case

14

qualified for three-member review under paragraph (e)(6) would have no bearing on his or her ultimate authority to resolve the appeal. Notwithstanding the propriety of panel review, the member could still dispose of the appeal in a summary order and, if a motion for reconsideration is filed, could deny that motion, again without the involvement of other Board members. *See id.* § 1003.1(e)(5) ("A motion to reconsider . . . a decision that was rendered by a single Board member may be adjudicated by that Board member unless the case is reassigned to a three-member panel . . . ."). Only if the regulations are viewed as mandating referral under the circumstances enumerated in paragraph (e)(6) may the Board and the courts monitor a member's compliance with the regulatory duties established by 8 C.F.R. § 1003.1(e).

The history of the regulations confirms this view. The rule initially proposed by the agency stated in paragraph (e)(6) that "[c]ases *shall* be assigned for review by a three-member panel . . . if the case presents one of [the enumerated] circumstances." Procedural Reforms To Improve Case Management, 67 Fed. Reg. 7309, 7315 (proposed Feb. 19, 2002) (emphasis added). The mandatory language of this provision demonstrates the agency's understanding that individual Board members would lack authority to decide cases that fall within the listed categories. They would instead be required to refer these cases for panel review.

The reason that the mandatory "shall" was dropped in the final regulations in favor of the permissive "may only" was, according to the agency, to avoid "judicial enforcement of three-member panel review." Procedural Reforms To Improve

15

Case Management, 67 Fed. Reg. at 54,888. But, despite this semantic shift, the agency made clear in its accompanying commentary that "[t]his change does not broaden the authority of a single Board member to decide these cases." *Id.* In other words, a single member is still bound by the same limitations that existed under the proposed mandatory version of the regulations. *See id.* at 54,886-87. The member is still required, even under the facially permissive final regulations, to refer cases that fall within the categories of paragraph (e)(6) for panel review.

That the agency did not "intend" for the courts of appeal to review the Board's decision to employ single-member review is not dispositive – or even relevant – to whether the matter is "committed to agency discretion." *Smriko*, 387 F.3d at 294-95. Rather, the availability of judicial review depends solely on the language of the regulations and the interpretation given to them by the agency. *See id.*; *see also Auguste v. Ridge*, 395 F.3d 123, 150 (3d Cir. 2005) ("[T]he [Board's] interpretation and application of its own regulations is entitled to 'great deference.'") (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001)). When an agency's rules circumscribe its authority in a defined and assessable manner, the judiciary is competent – indeed compelled under the Administrative Procedure Act, 5 U.S.C. §§ 701, 702, 704 – to pass upon the agency's compliance with those provisions. *Smriko*, 387 F.3d at 290-92.

Under the agency's own interpretation of the regulations, a Board member's discretion to decide a case without panel review is informed and constrained by 8 C.F.R. § 1003.1(e)(5)

16

and (e)(6).  *See* Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 54,886-88.  These provisions offer concrete, judicially manageable standards by which a court may determine whether single-member disposition is permissible in a given case.  *Batalova v. Ashcroft*, 355 F.3d 1246, 1253 (10th Cir. 2004), *cited with approval in Smriko*, 387 F.3d at 292, 294 n.10.[7]

Further supporting judicial review is that the availability of panel consideration offers "important procedural benefits" to individuals involved in immigration proceedings.  *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970) (suggesting that judicial review of agency compliance with internal rules is appropriate when the rules are "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion").  The agency acknowledged, in promulgating the single-member review provisions, that panel review is necessary in cases presenting difficult or important questions of fact or law to ensure that adequate attention is given to complex issues. Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 54,887-88; Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 7311.  This practice aids not only the agency itself, through greater assurance of adjudicative

[7]*See also Lincoln*, 508 U.S. at 190-91 (stating that a matter is "committed to agency discretion" if the relevant provisions are "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

consistency, but also the participants in the process, through more detailed consideration of significant cases. Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 54,887-88. Indeed, the regulations implicitly recognize this advantage to individuals by allowing a participant to request three-member panel review in the notice of appeal.[8] These provisions are not merely an "internal management directive," *cf.* 8 C.F.R. § 1003.1(e)(8) (establishing time limits for adjudication of appeals), but confer on participants in agency proceedings a substantial benefit. This benefit may be enforced by the courts if improperly denied.

---

[8] *See* 8 C.F.R. § 1003.3(b) ("An appellant who asserts that the appeal may warrant review by a three-member panel . . . may identify in the Notice of Appeal the specific factual or legal basis for that contention."); *id.* § 1003.3(f) ("A party to an appeal . . . pending on August 26, 2002, may, until September 25, 2002, or the expiration of any briefing schedule set by the Board, whichever is later, submit a brief or statement limited to explaining why the appeal or motion does or does not meet the criteria for three-member review under § 1003.1(e)(6)."); *see also* Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 54,888 ("[I]n those appeals that do raise novel or complex factual or legal issues . . . a respondent is permitted, even encouraged, . . . to state in the Notice of Appeal and elaborate in a brief, the reasons why the appeal merits review by a three-member panel . . . ."). It does not appear that Purveegiin took advantage of this opportunity. However, the government does not argue that his inaction results in a waiver of the issue.

18

We recently confirmed, in *Smriko v. Ashcroft*, 387 F.3d 279 (3d Cir. 2004), our ability to review a similar agency practice: the Board's invocation of the streamlining provisions of paragraph (e)(4). Under these provisions, a single member may affirm the decision of an immigration judge if he or she determines that the issues are either "squarely controlled" by existing precedent or "are not so substantial that the case warrants the issuance of a written opinion."[9] 8 C.F.R.

---

[9]Paragraph (e)(4) of 8 C.F.R. § 1003.1 provides, in pertinent part, as follows:

> The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
>
> > (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or
> >
> > (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

*Id.* § 1003.1(e)(4).

19

§ 1003.1(e)(4). Like the single-member review regulations, the streamlining regulations impose affirmative limits on a single member's authority to resolve an appeal without panel participation. *See Smriko*, 387 F.3d at 292. These constraints provide judicially manageable standards by which a court may assess the Board's compliance with both the streamlining provisions and the single-member review procedures. *See id.* at 292, 294 n.10 (citing *Batalova*, 355 F.3d at 1253 (upholding judicial review of Board's invocation of single-member review)).

Only one court, the Court of Appeals for the Eighth Circuit in *Bropleh v. Gonzales*, 428 F.3d 772 (8th Cir. 2005), has held that it lacks jurisdiction to consider the issue. *Id.* at 779. This holding was based entirely, and without independent analysis, on the prior opinion in *Ngure v. Ashcroft*, 367 F.3d 975 (8th Cir. 2004), in which it concluded that "the [Board's] decision whether to employ the [streamlining provisions] in a particular case is committed to agency discretion and is not subject to judicial review." *Id.* at 983. We rejected *Ngure* in *Smriko*, 387 F.3d at 294-95, and, for the same reasons, we now reject *Bropleh*.

The decision to employ single-member review is not a matter "committed to agency discretion." The regulations provide a "meaningful standard against which to judge the agency's exercise of discretion," *see Heckler*, 470 U.S. at 830, and confer "important procedural benefits" on participants, *see Am. Farm*, 397 U.S. at 538-39. The agency's invocation of these provisions is properly subject to judicial review and will

20

be overturned if "arbitrary" or "capricious."  5 U.S.C. §§ 702, 706(2)(A); *see Smriko*, 387 F.3d at 296-97.

B.

Turning to the merits, it is clear that the Board erred in refusing to refer this case to a three-member panel.  Paragraph (e)(5) of 8 C.F.R. § 1003.1 allows a single member to issue an order "affirming, modifying, or remanding" a decision under review. Notably absent from this general language is permission to "reverse" a decision of an immigration judge.  Rather, the sole enumerated circumstance in which a single member may reverse a decision is "if such reversal is plainly consistent with and required by intervening Board or judicial precedent, by an intervening Act of Congress, or by an intervening final regulation." *Id.* § 1003.1(e)(5).  Only when reversal is required as a "nondiscretionary matter" under intervening law may a single member resolve the appeal.  Procedural Reforms To Improve Case Management, 67 Fed. Reg. at 54,887.

This case does not satisfy this standard.  The Board's reversal was based not on intervening legal precedent, but on factual disagreements between the immigration judge and the authoring Board member.  The immigration judge found that Purveegiin would be imprisoned and denied medical treatment in Mongolia, constituting "severe pain and suffering."  The Board member found to the contrary, and on that basis reversed

21

the judge's holding that Purveegiin faced the threat of torture.[10] Reversal was not "nondiscretionary" in this case. It was instead premised on differing factual interpretations of the administrative record.

The government asserts that reversal was "consistent with and required by" our recent opinion in *Zubeda*.[11] This argument is specious. The Board's order – and its two subsequent orders reaffirming the same result – did not depend on the "specific intent" of Mongolian officials, the element of torture discussed in *Zubeda*. 333 F.3d at 473-74. Rather, the basis for reversal was the Board member's disagreement with two factual findings of the immigration judge: (1) that Purveegiin would be imprisoned upon return to Mongolia, and (2) that he would be denied essential medical treatment in prison. These findings have nothing to do with the intent of Mongolian officials, but, instead, are relevant to whether Purveegiin would be subject to

---

[10] *See* 8 C.F.R. § 208.18(a)(1) ("Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . .").

[11] The government previously asserted that reversal was "consistent with" *In re J–E–*, 23 I. & N. Dec. 291 (BIA 2002), in which the Board held that an alien's likely imprisonment in "inhuman prison conditions" did not constitute "torture" under the CAT because government authorities did not have the "specific intent" to cause harm to detainees. *Id*. at 300-01. This argument was withdrawn in a subsequent letter brief to the Court, and will not be addressed.

"severe pain and suffering" in Mongolia. *See* 8 C.F.R. § 208.18(a)(1). Reversal in this case was not "required by" *Zubeda* and did not qualify under paragraph (e)(5) of 8 C.F.R. § 1003.1.[12]

This case, instead, falls nicely within the categories for which three-member review is warranted under paragraph (e)(6). These include cases that present the "need to reverse the decision of an immigration judge . . . other than a reversal under § 1003.1(e)(5)." *Id.* § 1003.1(e)(6). As discussed previously, reversal in this case was not "plainly . . . required by" intervening precedent under paragraph (e)(5), but was necessitated by the Board's contrary findings of fact. The regulations anticipate that these cases will be assigned to a three-member panel, to ensure complete and thorough review of the factual record.

The Board's failure to refer this case for panel review was in error, and may have affected its resolution of the factual

---

[12]Indeed, it appears that the immigration judge in this case correctly forecast our discussion of the "specific intent" element in *Zubeda*. He held, as we would later state, that government officials' knowledge of dangerous prison conditions may give rise to an inference that those officials "specifically intended" to harm detainees. *See Zubeda*, 333 F.3d at 473-74. *But see Auguste*, 395 F.3d at 148 (rejecting discussion in *Zubeda* as dicta). Thus, if anything, *Zubeda* would have counseled in favor of affirming, not reversing, the decision of the immigration judge.

23

disputes underlying Purveegiin's claims.  Remand is necessary to allow a panel of the Board to pass upon these issues in the first instance.[13]

III.

The single-member review regulations, like the streamlining regulations, allow the Board of Immigration Appeals to expedite disposition of cases that do not present substantial questions of fact or law.  But these provisions are not to be used as a wholesale substitute for panel deliberation and decision.  Resolution of disputed factual and legal issues through summary order deprives litigants of thorough consideration of their claims, deprives the Board of the opportunity to develop its own precedent, and deprives the courts of an adequate basis on which to assess the agency's compliance with statutory mandates.

This case presented a clear factual disagreement between the reviewing Board member and the immigration judge.  Panel review was not only appropriate, but required.  The Board's decision to resolve this case through single-member order was arbitrary and capricious, warranting remand for reconsideration by a panel.

---

[13]*Cf. Smriko*, 387 F.3d at 296-97 (stating that improper application of streamlining provisions may not warrant remand when case may be resolved on other grounds).

The petition for review will be granted. This case will be remanded to the Board of Immigration Appeals for further proceedings consistent with this opinion. The motions to supplement the record, to proceed pro se, and to be present at oral argument before this Court will be denied as moot.