# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3518

_____

| | | |
|---|---|---|
| Nuga Ivo Nyama, | * | |
| | * | |
| Petitioner, | * | |
| | * | On Petition for Review from the |
| v. | * | Board of Immigration Appeals |
| | * | |
| John Ashcroft, | * | |
| | * | [PUBLISHED] |
| Respondent. | * | |

_____

Submitted: December 19, 2003

Filed: February 6, 2004

_____

Before MORRIS SHEPPARD ARNOLD, LAY, and RILEY, Circuit Judges.

_____

PER CURIAM.

Nuga Ivo Nyama, a citizen of Cameroon, arrived illegally in the United States in early October, 1999. Removal proceedings were commenced against him shortly thereafter. Nyama applied for asylum, withholding of removal, and relief under the Convention Against Torture. The Immigration Judge ("IJ") denied these applications and ordered Nyama to be removed from the United States. The Board of Immigration Appeals ("BIA") summarily affirmed this decision. Nyama now appeals, and we affirm.

# I. BACKGROUND

Nyama, a 25-year-old male, was born in Mankon, Cameroon, on December 6, 1978. Nyama has never been a member of a political party. He claims, however, that his brother and father were both members of a political opposition group in Cameroon called the Social Democratic Front ("SDF") beginning in the early 1990s. According to Nyama, his father was a senior advisor in a local SDF chapter in a northwestern province of Cameroon and was driven into hiding on numerous occasions for his political activities. Nyama does not currently know where he is. Nyama further asserts that his brother was arrested while on his way home from an SDF meeting in 1991. He was detained for two months and then released, badly beaten. He died two days later from these injuries. Nyama's sister and mother were arrested in 1999 in an attempt by the police to force Nyama's father to surrender. Nyama claims that he was also pursued by the authorities, but managed to avoid them. Through the help of his uncle, he eventually obtained a ticket, passport, and visa to leave Cameroon for Jamaica. He traveled instead to the United States and entered the country without a visa, leading to these removal proceedings. Nyama did not contest removal, but instead applied for asylum under 8 U.S.C. §§ 1158(b)(1) and 1101(a)(42)(A), withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture under 8 C.F.R. § 208.16(c).

Nyama testified before the IJ to the above facts. Nyama also presented reports on the conditions of Cameroon and four letters from his sister and friends from Cameroon. On cross examination by the government, Nyama stated that while he had a sister living in Cameroon, he had no siblings, half-siblings, or other relatives living in the United States.

After Nyama testified, the INS presented recent asylum applications from three other individuals named Nyama, all of whom, like Petitioner, were currently living in St. Paul, Minnesota. All three bore striking similarities to Nyama's own

application. All the applicants claimed the same father as Nyama, Nayasa William Nyama, with variations of the spelling "Nayasa." All the applicants claimed essentially the same address as Nyama in Cameroon, with some minor variations. Finally, the applicants basically told the same story in their applications: that their father was very active in the SDF, he disappeared, and that their uncle (or, in the case of one applicant, an unidentified "someone") helped them escape Cameroon. Petitioner stated that he did not know these other applicants, that he was unaware that they were claiming to have the same father, and that he was surprised by the whole situation.

The IJ was puzzled by the other applications and understandably concerned that, "even a part [sic] from [the other applications, there was a] lack of any sort of corroboration of the core factual basis of [Nyama's story,] which is the father's involvement in the SDF." (A.R. 163.) The IJ granted Nyama an additional six months to obtain these corroborating documents and for the INS to subpoena the three other applicants. When the hearing reconvened six months later, Nyama submitted no additional corroborating evidence. The three other applicants, despite having been subpoenaed, did not show up to testify. Nyama did not object to their nonappearance.

In his decision, the IJ stated that, in light of the other applications, he was concerned that "the activities of Nayasa William Nyama are entirely fabricated." (A.R. 53.) The IJ noted that the father's political activities were "particularly important in the context of this case because the respondent himself never had any political involvements of his own." (A.R. 53-54.) Remarking that it was "absolutely inexplicable" that Nyama had made no effort to obtain verification from the SDF, the IJ found that, "[c]oupling this unexplained failure to obtain corroboration with these other asylum application[s] identifying a William Nayasa Nyama as the father, the Court has very grave reasons to doubt this respondent's credibility." (A.R. 54-55.)

-3-

The IJ ordered Nyama's removal, denying his application for asylum, withholding of removal, and relief under the Convention Against Torture. Nyama now appeals, claiming that the IJ made numerous errors, that there was substantial evidence to support his application for asylum, and that the BIA's summary affirmance of the IJ's decision violated his due process rights.

## II. ANALYSIS

A. *Substantial Evidence*

The Attorney General may, in his discretion, grant asylum to an individual who meets the statutory definition of a "refugee:" an alien who is unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." See 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A).[1] This court reviews the BIA's determination[2] that an applicant failed to establish statutory eligibility for asylum and withholding of removal for "substantial evidence." See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002). The substantial evidence standard is a deferential one, requiring a reviewing court to uphold a denial of asylum unless an alien demonstrates "that the evidence he presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Elias-Zacarias, 502 U.S. at 483-84.

---

[1]An asylum seeker's request for asylum is contemporaneously viewed as an application for withholding removal. The standard for withholding removal is more burdensome on the applicant than for asylum. To establish eligibility for withholding removal, an applicant must demonstrate a "clear probability" of persecution. See Regalado-Garcia v. INS, 305 F.3d 784, 788 (8th Cir. 2002).

[2]When the BIA affirms an IJ's opinion without additional explanation, the IJ's opinion becomes the subject of our judicial review. See Maashio v. INS, 45 F.3d 1235, 1238 (8th Cir. 1995).

-4-

Nyama argues on appeal that the testimony he gave before the IJ, together with the handwritten letters from his sister and friends and the human rights reports and other documents describing the political climate in Cameroon, establishes a well-founded fear of future persecution sufficient to support his application for asylum. We do not believe, however, that Nyama's evidence establishes a well-founded fear of future persecution. Instead, we agree with the IJ that the existence of the other applications, together with a lack of any corroboration of Nyama's father's or brother's involvement in the SDF (and Nyama's inexcusable failure to even attempt to obtain this corroboration), gives reason to doubt the veracity of Nyama's story.

Nothing in Nyama's appeal persuades us that the IJ's skepticism was unfounded. Nyama does not attempt to unravel the mystery of the four corresponding applications, or otherwise explain why his story is to be believed. Instead, Nyama contests the admissibility of the three other applications, the IJ's credibility determination, and the IJ's demand that Nyama obtain additional corroborating evidence.

First, Nyama argues that the other applications should not have been admitted because they were hearsay. This is incorrect. The reports were offered not to prove the truth of the matter asserted, but instead to impeach the credibility of Nyama's asylum narrative. See Fed. R. Evid. 801(c); Foster v. Gen. Motors Corp., 20 F.3d 838, 839 (8th Cir. 1994) (holding that the admission of a report was not hearsay because it was not offered to prove its truth, but to impeach the veracity of the witness's direct testimony). Even if they were hearsay, however, the applications were still properly admitted. The traditional rules of evidence do not apply to immigration proceedings. See, e.g., Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996). "The sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair." Espinoza v. INS, 45 F.3d 308, 310 (9th Cir. 1995). This is true even for hearsay evidence. See Kiareldeen v. Ashcroft, 273 F.3d 542, 549 (3d Cir. 2001). There is no question that these additional applications were

highly probative of the authenticity of Nyama's asylum narrative and his eligibility for asylum, and we do not find that their admission was unfair to Nyama.

Second, Nyama argues that the admission of the applications denied him due process of the law because he was "ambushed" by these applications and did not have reasonable time to examine the evidence against him. See 8 U.S.C. § 1229a(b)(4)(B). However, given that the applications were offered to impeach Nyama's credibility, we do not believe that the government had a duty to disclose them any earlier. Cf. Fed. R. Civ. P. 26(a)(1)(B) (providing an exception to the regular disclosure requirements when documents will be used "solely for impeachment"). Furthermore, the IJ did not admit the applications or require Nyama's counsel to object at the time the government first introduced them. He admitted them only when the hearing reconvened six months later, allowing Nyama's counsel the opportunity to object at that time. Thus, there was no unfair surprise.

Third, Nyama argues that there was no nexus between the record and the IJ's adverse credibility decision. In evaluating such determinations, "[t]his court defers to an immigration judge's credibility finding where the finding is supported by a specific, cogent reason for disbelief." Perinpanathan, 310 F.3d at 597 (quotations and citations omitted). Here, the IJ's credibility determination was supported by the existence of four very similar applications for asylum, all of which claimed the same father. As Nyama testified that he had no siblings in the United States, the direct implication of these applications was, as the IJ pointed out, that "the activities of Nayasa William Nyama are entirely fabricated." (A.R. 53.) The IJ very generously gave Nyama six months to gather more information to corroborate his shaky story and explain what was going on. After six months, however, Nyama could not explain the existence of the other applications or present a single piece of additional evidence to corroborate his story. In fact, it appears that Nyama did not even make an effort to contact the SDF even though the IJ had admonished him that he must do this for his asylum application to succeed. Furthermore, it came out at this time that he did, in

-6-

fact, know at least two of the other people who had filed the similar applications. Under these circumstances, we find no error in the IJ's credibility determination.

Finally, the IJ did not err in demanding additional corroborating evidence. Nyama argues that under Diallo v. INS, 232 F.3d 279 (2d Cir. 2000), credible testimony supported by reasonable explanations for lack of corroborative evidence should sustain a claim for asylum. Id. at 289-90. Here, however, it was precisely because Nyama's asylum narrative was *not credible* that the IJ was seeking corroboration that would support Nyama's story. Furthermore, Nyama had no explanation as to why he did not contact the SDF or other human rights organizations. Thus, the IJ's demand for further corroboration was not error.

Accordingly, we hold that, considering the record as a whole, substantial evidence supports the IJ's conclusion that Nyama is not eligible for asylum.

B. *Due Process*

Nyama contends that the BIA's summary affirmance of the IJ's decision violated his right to due process.[3] We must disagree, however, as this court has recently decided this issue, finding that the BIA's streamlining procedures do not violate a petitioner's due process rights. See Loulou v. Ashcroft, --- F.3d ----, 2003 WL 23025601 (8th Cir., Dec. 30, 2003).

---

[3]Nyama's brief also contends that "the immigration judge committed a number of procedural errors that resulted in a violation of Mr. Nyama's due process rights." This section of the brief, however, primarily discusses the BIA's summary affirmance and does not mention any specific "procedural errors" committed by the IJ. It is therefore not clear whether Nyama is referring to his former arguments or whether he believes the IJ to be guilty of some other "procedural errors." Whatever the case may be, after a close review of the record, we find nothing to suggest that the IJ violated Nyama's due process rights.

## III.  CONCLUSION

The order of the Board of Immigration Appeals is AFFIRMED.

_____