# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1676

_____

Jared Ombongi,                       *

                                *

          Petitioner,           *

                                *  Petition for Review of an Order

      v.                      *  of the Board of Immigration Appeals.

                                *

Alberto Gonzales, Attorney General  *

of the United States,          *

                              *

          Respondent.        *

_____

Submitted: February 18, 2005

Filed: August 1, 2005

_____

Before BYE, HEANEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jared Ombongi seeks review of a Final Order of the Board of Immigration Appeals (BIA) dismissing his appeal of a decision by an immigration judge (IJ). We affirm.

## I.

Jared Ombongi is a thirty-two year-old native and citizen of Kenya. At the time of his October 7, 2002 hearing, Ombongi was a resident of Minneapolis, Minnesota and married to his third American wife, Heather Marie Morris.

In Kenya, Ombongi had been a student at Kenya Polytechnic until the school closed in 1992. After the school closed, he returned to his hometown of Narok and lived with his brother, Nicholas, who was a magistrate. On June 26, 1992, Ombongi was issued a Kenyan passport. On July 23, 1992, he received a student visa to attend Cochise College in Arizona. On July 26, 1992, Ombongi left Kenya on a flight to Los Angeles. He only attended college in Arizona for one semester.

In 1993, Ombongi married Heather Mae Rice. In 1994, while still married to Rice, Ombongi married Layle Marie Kobow. Kobow filed a visa petition on behalf of Ombongi. However, when she learned that Ombongi was still married to Rice, Kobow reported Ombongi to the Immigration and Naturalization Service (INS). In her letter to the INS, Kobow alleged that she did not have marital relations with Ombongi, that she did not know where he was, and that the marriage had been arranged by a friend with the understanding that Ombongi would help her financially.

On July 25, 1994, Ombongi filed an asylum application with the INS. In the application, Ombongi alleged that his family had been driven out of their homes by ethnic clashes in 1993. He also asserted that he was a member of the Forum for the Restoration of Democracy (FORD), an opposition party.

In 1997, Ombongi and Kobow were divorced. In 2001, Ombongi and Rice were divorced. On November 2, 2001, Ombongi married Morris. On September 26, 2002, Morris filed a visa petition on behalf of Ombongi.

During his asylum hearing on October 7, 2002, Ombongi was the only witness. Ombongi's motion to continue the hearing to await adjudication of the pending visa petition was denied. Ombongi testified that civil unrest and conflict had driven his family away from their homes. In the process, the family's property and livestock were destroyed. He said that he had not had contact with any of his family, including Nicholas since 1995. Ombongi testified as to the rest of the allegations in his asylum petition.

Ombongi was unable to provide documentation for his membership in FORD. He alleged that his membership card had been confiscated. Ombongi further testified that, because of his role in FORD, he was harassed and interrogated by police. Ombongi alleged that during FORD protests he was subject to caning by police who also used tear gas to disperse crowds. He further testified that his car had been stoned during ethnic conflicts.

Ombongi stated that most of his family was in a refugee camp in Kenya and he had lost contact with them, but he believed his brother Nicholas was supporting them. Regarding Nicholas, Ombongi alleged that since he had left Kenya, his brother had been harassed, questioned by the government, and robbed.

The IJ found that Ombongi's evidence was implausible and not credible. The IJ felt Ombongi's testimony was uncorroborated and too general. The IJ found no past persecution and no well founded fear of future persecution. Additionally, the IJ, utilizing her discretion, denied asylum because of Ombongi's bigamy.[1] Because Ombongi failed to meet the burden for asylum, the IJ found that he also failed to show he met the burden for withholding of removal. Further, the IJ denied relief

---

[1] Because we find that the BIA and IJ did not err in finding that Ombongi failed to meet his statutory burdens to show past persecution or fear of future persecution, we do not consider the alternative grounds related to Ombongi's bigamy.

under the Convention Against Torture. The IJ denied Ombongi's application and ordered him removed.

Ombongi appealed the decision of the IJ. The BIA affirmed the IJ's findings. Ombongi appeals to this court.

## II.

In order to obtain asylum under the Immigration and Nationality Act, a petitioner must demonstrate that he or she is unwilling or unable to return to his or her home country because or past persecution of a well founded fear of future persecution because of race, religion, nationality, or membership in a particular social group. 8 U.S.C. § 1101(a)(42)(A). Both the IJ and the BIA found that Ombongi showed neither past persecution nor a fear of future persecution.

If an appellant seeks "to obtain judicial reversal of the BIA's determination, he [or she] must show that the evidence he [or she] presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992); see also 8 U.S.C. §1252(b)(4)(B). "We review the [BIA's] legal determinations de novo but recognize that its interpretation of the [Immigration and Nationality Act] is entitled to deference." Nyirenda v. INS, 279 F.3d 620, 623 (8th Cir. 2002).

In reaching her finding, the IJ had substantial doubts about the credibility of Mr. Ombongi's claims. We defer to an IJ's credibility finding if the IJ had a "specific, cogent, reason for disbelief." Ghasemimehr v. INS, 7 F.3d 1389, 1391 (8th Cir. 1993).

There are several specific and cogent reasons for the IJ to have found Ombongi's story to be not credible.[2]  First, the story offered by Ombongi lacks sufficient detail and is very general in crucial places.  If testimony is "meager, general, and not the type of specific or detailed evidence necessary to obtain asylum," the IJ is within his or her discretion to deny the claim.  Krasnopivtsev v. Ashcroft, 382 F.3d 832, 836 (8th Cir. 2004).  We can find no error with the IJ's finding that Ombongi's testimony was of this general type.

Second, Ombongi's explanation for his bigamy puts his credibility as a witness in doubt.  At his hearing, Ombongi testified that he did not commit bigamy because he did not know he was married to Rice when he married Kobow.  While it is possible that Ombongi was wholly unaware that his prior marriage had not been dissolved, we can find no error in the IJ's disbelief of Ombongi's explanation.

Third, we can find no error in the IJ's finding that Ombongi's alleged inability to make any contact with his family since 1995 was implausible.  As the IJ noted, Ombongi's brother Nicholas was a well known magistrate.  As a result, it was not unreasonable to expect Ombongi would have been able to find him in the years since 1995.  Ombongi made no attempt to contact the FORD party, of which his family were members, in order to locate them.  Without any recent information about the state of his family, it is unknown whether Ombongi's family was still in jeopardy and feared persecution.

Last, Ombongi was unable to provide any corroborating evidence for any of his allegations.  The lack of corroboration alone does not mean Ombongi was not credible.  However, in combination with the other factors, the dearth of

---

[2] This is not necessarily the same as finding Ombongi not credible as a witness. While some of the doubts expressed by the IJ relate to Ombongi's credibility, she found his story and underlying claims to be not credible as well.

documentation does undermine his credibility. We recognize that it is often difficult for a petitioner to obtain documentation from their home country. <u>Bellido v. Ashcroft</u>, 367 F.3d 840, 844 (8th Cir. 2004). Further, petitioners cannot be expected to get substantial documentation from their persecutors. <u>Ahmadshah v. Ashcroft</u>, 396 F.3d 917, 921 (8th Cir. 2005). Nonetheless, the lack of corroboration, especially from "friendly" sources in this matter, combined with the other credibility issues, raises substantial doubts about Ombongi's story. As a result, we find no error with the IJ's findings concerning the credibility of Ombongi's claims.

Even without the credibility issues raised by the IJ, it is far from clear that Ombongi's claims rise to the level required by statute. As the IJ noted, Ombongi was able to freely leave the country without harassment. His opposition party is represented in the national legislature. Some of the alleged damage to his family's property, including the stoning of the car, was due to ethnic conflict. However, the IJ did not err by finding that some of the damage was essentially collateral to the conflict and that, as a result, the family was not targeted because of their race, religion, nationality, or membership in a particular social group. There is insubstantial evidence from the country report that any potential threat of persecution exists at a nationwide level. Consequently, it was within the IJ's discretion to require a showing that Ombongi could not safely relocate within Kenya.

III.

Accordingly, for the reasons stated above, we deny Ombongi's petition for review.

_____