# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2403

_____

Koffi Mamana,

        Petitioner,

    v.

Alberto Gonzales,[1] Attorney General
of the United States,

        Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals.

_____

Submitted: October 11, 2005
Filed: February 8, 2006

_____

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Koffi Mamana petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming without opinion the decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and protection under Article III of the Convention Against Torture. We deny the petition.

_____

[1]Alberto Gonzales is substituted for his predecessor pursuant to Federal Rule of Appellate Procedure 43(c).

Mamana, a native and citizen of Togo, arrived in the United States on September 16, 2000, on a visitor's visa. He was authorized to remain until December 16, 2000, but when he stayed in the United States beyond that date, the former Immigration and Naturalization Service ("INS") commenced removal proceedings against him pursuant to 8 U.S.C. § 1227(a)(1)(B). In response, Mamana applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming that if he were returned to Togo, he would be persecuted on account of his political opinion.

In support of his claims, Mamana testified that in October 1993, he joined the Union Forces for Change ("UFC"), an opposition movement against General Eyadema, the president of Togo since 1967. He was a private businessman in Togo, repairing refrigeration equipment and selling used cars. Mamana claimed that in March 1999, the current prime minister, Agbeyome Kodjo, who was then the director of the port in Togo's capital city, contacted him and asked him to help in a legislative election by giving a speech. Mamana testified that when he refused, government officials arrested him, took him to a house belonging to Kodjo, took off his clothes, and threatened him with death if he did not comply with their commands. He said that in May 1999, Kodjo made a second demand for him to read a motion at a political rally. Mamana testified that after he refused again, four armed military men went to his house looking for him, but that he was not home. Mamana said he then went into hiding until a friend, who was a nephew of President Eyadema, helped to get him a passport so that he could leave Togo in September 2000. According to Mamana, his "second in command" took care of the business from after Mamana left Togo, until the business closed in April 2001.

Mamana testified that between October 1999 and March 2000, his wife received three subpoenas from the government, which directed Mamana to appear in connection with a judicial investigation. Mamana assumed that the subpoenas were designed "so that I should come in order to be killed." (J.A. at 108). Mamana also

provided an offer of proof in lieu of the testimony of Schadrach Dobley, stating that Dobley knew Mamana in Togo, that Mamana was a member of the UFC, that many atrocities had been committed in Togo, and that Dobley knew that President Eyadema would want Mamana killed.

The IJ rejected Mamana's application for asylum, withholding of removal, and protection under the Convention Against Torture, finding that Mamana's account was not credible. The IJ found implausible and "not . . . believable at all" Mamana's assertion that he, a man with no "public reputation" and "no capacity to influence others to persuade them to support the president's party," would be approached by the government to assist with electioneering. The IJ further found unbelievable Mamana's claim that a high government official such as Mr. Kodjo, a member of a party that had been in power for decades, would be dispatched to seek the election assistance of Mamana, who did not even hold a position in the opposition party. In addition to these observations, the IJ found that Mamana did not have "any proof from any reliable source" that the events of March and May 1999 occurred. The IJ concluded that the subpoenas ostensibly served on Mamana's wife were of "dubious authenticity," but that even if they were authentic, the documents merely summoned Mamana for questioning and did not endanger his life.

The IJ thought it "inconsistent" that Mamana would go into hiding from the government between May 1999 and September 2000, but that a nephew of the president would help him obtain a passport to leave the country. And the IJ disbelieved Mamana's claim that although he went into hiding in May 1999, he continued to run his business up until the time he left the country, saying that this course of action did "not sound like what a wanted man would do." In summary, the IJ found that "none of this has even either the sound, the substance, or the ring of plausibility." (J.A. at 70-71). The BIA affirmed the IJ's decision without opinion.

-3-

We lack jurisdiction to consider Mamana's claim that the BIA should not have employed the affirmance-without-opinion procedure in his case, *Ngure v. Ashcroft*, 367 F.3d 975, 981 (8th Cir. 2004), and we treat the IJ's findings as the final decision of the agency, *see* 8 C.F.R. § 1003.1(e)(4); *Dominguez v. Ashcroft*, 336 F.3d 678, 679 n.1 (8th Cir. 2003). We review the IJ's factual determinations under the substantial evidence standard, *Turay v. Ashcroft*, 405 F.3d 663, 666 (8th Cir. 2005), and an IJ's adverse credibility findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 668 (internal quotation omitted). We will set aside the decision of the BIA only if the petitioner demonstrates that the evidence was so compelling that no reasonable factfinder could fail to find in favor of the petitioner. *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2004).

The Attorney General has discretion to grant asylum to a refugee, 8 U.S.C. § 1158(b)(1), and a refugee is defined as an alien who is unwilling to return to his home country because of "(1) past persecution or (2) a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To establish a well-founded fear of future persecution, the alien must show that he subjectively fears persecution, and that there is credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's native country. *Francois v. INS*, 283 F.3d 926, 930 (8th Cir. 2002).

Mamana argues that he demonstrated a well-founded fear of future persecution based largely on the incidents of March and May 1999 about which he testified. He contends that the IJ may not disregard his testimony based only on a conclusion that it did not have "the sound, the substance, or the ring of plausibility," without citing specific inconsistencies between the petitioner's testimony and other evidence in the record.

-4-

We conclude that the IJ's adverse credibility determination was supported by substantial evidence. Our court has held that an IJ may properly base a credibility finding on the "implausibility" of an alien's testimony, as long as the IJ gives specific and convincing reasons for disbelief. *E.g.*, *Ombongi v. Gonzales*, 417 F.3d 823, 825-26 (8th Cir. 2005); *Begna v. Ashcroft*, 392 F.3d 301, 304 (8th Cir. 2004); *Rucu-Roberti v. INS*, 177 F.3d 669, 670 (8th Cir. 1999) (per curiam). We are satisfied that the IJ gave satisfactory reasons for disbelieving Mamana's testimony, and we do not believe that a reasonable factfinder would be compelled by the record to credit the disputed testimony, particularly in the absence of any corroboration, or what the IJ called "proof from any reliable source." *See Nyama v. Ashcroft*, 357 F.3d 812, 817 (8th Cir. 2004).

The IJ cited Mamana's lack of a public reputation or prominent position in the opposition party as reason to disbelieve his claim that a high-ranking government official in the well-entrenched governing party of Togo would seek out Mamana to give a speech on behalf of the government's party. A reasonable adjudicator, in the absence of corroborating evidence, could find this assertion implausible, just as we found it reasonable for an IJ in *Rucu-Roberti* to deem it implausible that guerillas would threaten an alien based on "minor" political activities. 177 F.3d at 670. The IJ here also found unbelievable Mamana's assertion that he went into hiding as a result of the alleged threats by government officials, because the testimony on this important point was internally inconsistent. At one stage, Mamana testified that after his encounter with government officials in May 1999, he continued to run his business until departing the country in September 2000. (J.A. at 115). Later, he testified that he was "in hiding" when subpoenas were delivered to his wife in February 2000 and March 2000, and said that he "didn't work anymore" while he was in hiding. (J.A. at 119). The IJ reasonably found that Mamana "did not provide a satisfactory answer" to the question of how he ran a business while in hiding, (J.A. at 65), and in fact, Mamana gave inconsistent testimony about whether he was running a business or in hiding between May 1999 and September 2000. *See Begna*, 392 F.3d at 304

(upholding IJ's decision that alien's testimony was implausible, in part because "during the time he claimed to be in hiding he continued to work in the family business").

While Mamana now contends that the IJ was wrong to discount Mamana's testimony because the government did not oppose his request for asylum, this contention does not accurately characterize the government's position before the administrative tribunal. At the evidentiary hearing, counsel for the government merely stated that *"if* credibility is found, then [there is] a well-founded fear [of persecution]." (J.A. at 137) (emphasis added). The IJ made an adverse credibility determination, and although the government's attorney perceived a "back bone" and "general unwaveringness" in Mamana's answers, the government never conceded the credibility of the testimony. The IJ believed firmly that Mamana's rendition of events was incredible, and this was a reasonable conclusion in light of the record as a whole. We therefore uphold the denial of Mamana's application for asylum. Because Mamana failed to satisfy the relatively lower burden of proof on his asylum claim, his claims for withholding of removal and for protection under the Convention Against Torture (which are based on the same grounds asserted in support of his alleged refugee status) fail as well. *Samedov v. Gonzales*, 422 F.3d 704, 708 (8th Cir. 2005); *Regalado-Garcia v. INS*, 305 F.3d 784, 788 (8th Cir. 2002).

The petition for review is denied.

_____