# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4123

_____

Alla Yakovenko,                          *
                                         *
         Petitioner - Appellant,         *
                                         *    Petition for Review of an Order
    v.                                   *    of the Board of Immigration
                                         *    Appeals.
Alberto Gonzales, Attorney General       *
of the United States of America,         *
                                         *
         Respondent - Appellee.          *

_____

Submitted:  February 15, 2007
    Filed:  February 23, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Alla Yakovenko petitions for review of an order of the Board of Immigration Appeals denying her application for asylum, withholding of removal, and relief under the Convention Against Torture.  We deny her petition.

The petitioner is a Ukrainian citizen whose mother is Jewish.  Her claims of persecution rest upon allegations of physical abuse at the hands of a college classmate, Dmitri Kutsenko, and rape by Kutsenko and three unidentified accomplices.  She claims these actions were motivated by anti-semitism.  These same allegations underlie her claims of torture, but without reference to the assailants' motivation.  She

alleges the government is unable or unwilling to control her assailants. She also alleges Kutsenko is a member of an ultranationalist, anti-semitic political organization that the government is unable or unwilling to control.

According to the petitioner, she did not experience abuse until her final year of college because she concealed her Jewish identity until that time. Her identity was revealed when some of her classmates saw her leaving a synagogue. After this general disclosure, she began to notice that people treated her differently. With the exception of the alleged assault by Kutsenko and the rape by Kutsenko and the other assailants, however, she does not identify any adverse actions that rise to the level of persecution or torture.

Regarding Kutsenko, she alleges a first instance of abuse during which he made anti-semitic comments and hit her in the stomach, causing her to double over. He then beat and kicked her on the head with sufficient force to cause her to lose consciousness. The administrative record contains a hospital report that purports to detail her examination and treatment following this abuse. The report states she had contusions and a concussion. The petitioner alleges that an investigator questioned her about the attack and that she named Kutsenko as the attacker. The investigator subsquently told her it was necessary to close the investigation because her identification of the attacker, standing alone, was insufficient to maintain the case.

The second instance of abuse is the rape. She alleges Kutsenko and three other young men forced her into a car, drove her to a wooded area on the outskirts of her town, made anti-semitic remarks, and beat and raped her until she lost consciousness. The administrative record contains a second hospital report that she alleges relates to her medical treatment following the rape. This second report details abdominal pain, but the report makes no reference to claims of rape, abuse, or signs of physical trauma. In fact, it discusses routine rather than trauma-related medical issues. She alleges a different investigator questioned her after she reported the rape, and she again

identified Kutsenko, this time from pictures provided by the investigator. According to the petitioner, the investigator subsequently told her he was closing the investigation because Kutsenko had an alibi and witnesses who placed him at another location at the time of the alleged rape.

The petitioner claims she and her family were unsatisfied with the investigations and sought further explanation from higher-ranking police officials. The administrative record contains a response letter from police which states only, "The investigation regarding [y]our case is terminated. Your case is closed due to lack of evidence." The letter does not identify the subject matter of the referenced case or any specific information about the case to indicate that it involved the alleged beating or rape.

According to the petitioner, she eventually fled the Ukraine and traveled to Mexico. She claims she decided to leave the Ukraine after she received a threatening, anti-semitic letter. She also claims, however, that she obtained a Mexican visa from the Mexican Embassy in Warsaw, Poland, one day after she reportedly received the letter.

The petitioner reports she met a woman named Maria on the plane to Mexico and lived and worked with Maria in Mexico for a period of about seven months. The petitioner does not remember Maria's last name or address or the name or address of the business where she and Maria worked. The petitioner claims she entered the United States near Tijuana by walking across the border with a group of people whom the border guards elected not to stop or question. She also claims she obtained a plane ticket and flew to the Twin Cities the following day.

In her application for asylum, she claimed she entered the United States on June 24, 2001. She later claimed this date was a typo and she actually entered the United States on July 24, 2001. This distinction is important because she filed her application

for asylum on July 10, 2002, making her application timely if she entered the United States on July 24, 2001, but untimely if she entered on June 24, 2001.

When her case ultimately came before an Immigration Judge ("IJ") for a hearing on the merits, she submitted documentary evidence, including the documents described above, which provided some support for her allegations of persecution. The IJ found she entered the United States on June 24, 2001 and her application for asylum was untimely. As to her claims for withholding of removal and relief under the Convention Against Torture, it was established at the hearing that her only allegations of past persecution or fears of future abuse were at the hands of Kutsenko and the other men who allegedly raped her. The IJ found she had not sufficiently demonstrated that these alleged criminal acts were sanctioned or condoned by the government. The IJ found the alleged initiation and abandonment of investigations by police did not demonstrate governmental unwillingness or inability to stop abuse or torture. Rather, the termination of the alleged investigations for lack of evidence was reasonable and showed at most poor policework.

The IJ also found a lack of evidence to corroborate the petitioner's position that anti-semitism was generally sanctioned, supported, or tolerated by the Ukrainian government. Country reports and other evidence of nationwide conditions indicated governmental disapproval of anti-semitic activities and also described the growth of open and visible Jewish institutions in the country. These same reports acknowledged the presence of anti-semitism and ultranationalist groups in the country, but stated that adverse actions by these groups were on the decline and were not supported by the government. Finally, the IJ noted that the petitioner's Jewish mother and half-Jewish sister still lived in the same home in the same town where the petitioner had lived, the petitioner's mother worked as a laboratory doctor in the hospital where the petitioner had been treated, and neither of these women had suffered any harm or torture.

The IJ ultimately determined the petitioner was not credible based on the omissions in her recollection of her time in Mexico, the unbelievability of the timing between her decision to leave the Ukraine and her receipt of a Mexican visa, the failure of the medical report to substantiate her claim of rape, the absence of information in the police letter to tie the letter to her claims of abuse, and the incredible nature of her story of entry into the United States. The IJ found in the alternative that, because the petitioner's claimed fear related to the actions of an isolated group of men, because her family remained in the Ukraine unharmed, and because the official stance in the Ukraine was not shown to be one of support for the persecution of Jewish people, the petitioner had failed to show a risk of harm that extended to other parts of the Ukraine and prevented relocation within the Ukraine.

The Board affirmed on the same grounds set forth by the IJ.

II.    Discussion

A.    Asylum

On appeal, the petitioner challenges all of the Board's rulings. The government asks that we affirm for the reasons set forth by the IJ and the Board and argues we lack jurisdiction to review the finding that the application for asylum was untimely.

We agree that we lack jurisdiction to address the petitioner's asylum claim. Absent changed or extraordinary circumstances, asylum relief is unavailable to a petitioner who fails to file her application for asylum within one year of entry into the United States. 8 U.S.C. § 1158(a)(2)(B) and (D). Our review is precluded generally by § 1158(a)(3), which provides, "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." Although the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (2005), codified in relevant part at 8 U.S.C. § 1252(a)(2)(B) and (D), expressly grants

us limited jurisdiction to review decisions under § 1158(a)(2), that jurisdiction only extends to the review of alleged constitutional violations or errors of law.[1]  See, e.g., Munoz-Yepez v. Gonzales, 465 F.3d 347, 351 (8th Cir. 2006) (finding jurisdiction under the REAL ID Act to review questions of law and constitutional claims).  The REAL ID Act does not grant us jurisdiction to review discretionary decisions or factual determinations under § 1158(2).  Ignatova v. Gonzales, 430 F.3d 1209, 1213-14 (8th Cir. 2005) (finding that jurisdiction did not exist under the REAL ID Act to review either a discretionary determination that no "extraordinary circumstances" existed to excuse an untimely application or to review "questions of fact underlying discretionary decisions of the Attorney General").

We believe it is clear that the determination of a date of entry is a factual finding that is shielded from our review by § 1158(a)(3) and not within the scope of the jurisdictional grant contained in the REAL ID Act.  Other courts examining this issue in light of the REAL ID Act agree.  See, e.g., Chacon-Botero v. U.S. Attorney General, 427 F.3d 954, 957 (11th Cir. 2005) (finding no jurisdiction under the REAL ID Act to review the factual determination of untimeliness); Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir. 2005) ("[D]iscretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review.").  The petitioner in the present case does not allege a legal error or a constitutional

---

[1]8 U.S.C. § 1252(a)(2)(D), "Judicial review of certain legal claims" provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

violation such as a deprivation of due process under the Fifth Amendment. See, e.g., Munoz-Yepez, 465 F.3d at 351 (finding jurisdiction to review an arguably discretionary decision by the Board where a panel of our court characterized the Board's decision as one that involved a question of law, namely, interpretation of a definition set forth in the Immigration & Nationality Act); Ibarra-Terrazas v. Gonzales, 461 F.3d 1046, 1048 (8th Cir. 2006) (finding jurisdiction under the REAL ID Act to review a question of law where a petitioner alleged the Board violated certain regulations by failing to make a decision on the merits of an issue); Ming Ming Wijono v. Gonzales, 439 F.3d 868, 871 (8th Cir. 2006) (recognizing that jurisdiction does exist under the REAL ID Act to address constitutional claims, but finding no jurisdiction to review a petitioner's claim of an alleged due process violation under the Fifth Amendment where the petitioner had failed to raise the claim with the Board). Accordingly, we lack jurisdiction to review the asylum claim.

B.      Withholding of Removal/Convention Against Torture

We must defer to an IJ's finding that the petitioner is not credible "so long as it is supported by 'a specific, cogent reason for disbelief.'" Begna v. Ashcroft, 392 F.3d 301, 304 (8th Cir. 2004) (quoting Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002)). Because "the [Board] . . . denied withholding of removal, the petitioner bears the heavy burden of showing that [her] evidence was 'so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" Madjakpor v. Gonzales, 406 F.3d 1040, 1044 (8th Cir. 2005) (quoting Melecio-Saquil v. Ashcroft, 337 F.3d 983, 986 (8th Cir.2003)); see also 8 U.S.C. § 1252(b)(4)(B) (codifying this standard of review).

The IJ's stated reasons for disbelieving the petitioner were sufficiently specific and cogent to preclude reversal. The hospital report purportedly associated with the alleged rape failed to support the petitioner's claim. She told an unbelievable story regarding the timing of how she obtained her visa for Mexico and how she entered the

-7-

United States. Further, she could not recall basic information regarding her time in Mexico. Vague histories and general information lack the type of detail an IJ can reasonably expect and may form the basis of an adverse credibility assessment. See Ombongi v. Gonzales, 417 F.3d 823, 825 (8th Cir. 2005) ("If testimony is 'meager, general, and not the type of specific or detailed evidence necessary to obtain asylum,' the IJ is within his or her discretion to deny the claim.") (quoting Krasnopivtsev v. Ashcroft, 382 F.3d 832, 836 (8th Cir. 2004)). The absence of medical documentation regarding the rape is particularly troublesome because the petitioner claims to have reported the rape and visited the hospital following the rape, but the petitioner failed to provide corroborating documents—documents that would presumably be easy to obtain given the fact that her mother works as a laboratory doctor at the same hospital. In light of this evidence and given the deferential standard of review, we cannot disturb the IJ's rejection of the petitioner's allegations.

Even if the petitioner had been deemed credible, she would not be entitled to relief. To be entitled to withholding of removal, the petitioner must establish a past or future threat to life or freedom on account of a protected basis at the hands of governmental actors or persons the government is unable or unwilling to control. 8 C.F.R. § 208.16(b)(1); Miranda v. INS, 139 F.3d 624, 627 (8th Cir. 1998). Absent such past harms, a petitioner must prove that it is more likely than not she will suffer such harm if returned to her homeland. 8 C.F.R. § 208.16(b)(2)(ii). To be entitled to relief under the Convention Against Torture, it is not necessary that torture be motivated by a protected basis, but there must be a clear probability the petitioner will be tortured if returned to her homeland. Id. at § 208.16(c)(2).

For both forms of relief, it generally is insufficient that a petitioner has been a victim of criminal attack by one person or group of accomplices. Rather it is necessary that conditions within a country make internal relocation an unsafe and unreasonable alternative. See 8 C.F.R. § 208.16(b)(1)(i)(B) and (b)(2) (withholding of removal under the Immigration and Nationality Act is unavailable where a

-8-

petitioner could "avoid a future threat to . . . her life or freedom by relocating to another part of the . . . country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so."); id. at § 208.16(c)(3)(ii) (noting that, when assessing the likelihood of future torture under the Convention Against Torture, the Board should consider, "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured."). The Board correctly determined that the petitioner's allegations of abuse by Kutsenko and his accomplices failed to show it would be unsafe or unreasonable to relocate within the Ukraine.

We affirm the Board and deny the petition for review.

_____