# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1642

_____

| | | |
|---|---|---|
| Jose Luiz Bartolo-Diego, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order |
| v. | * | of the Board of Immigration Appeals. |
| | * | |
| Alberto Gonzales, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 15, 2007
Filed: June 27, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Petitioner seeks review of the Board of Immigration Appeals' (BIA) affirmance of the order entered by an Immigration Judge (IJ) denying his claim for relief under the Immigration and Nationality Act ("INA" or "the Act"), 8 U.S.C. § 1252(a)(1) (2000). We deny the petition.

## I.

Bartolo-Diego was born in Guatemala on June 5, 1977, and resided there until he fled the country in 1994. His father had been a member of the Guatemalan military

until he was killed in 1984 while fighting against anti-government guerilla forces. In 1989, when Bartolo-Diego was approximately twelve years old, the guerillas came to his home, demanded that he join them, and threatened to harm him and his family if he refused. Bartolo-Diego did refuse to join them, and the guerillas proceeded to beat him severely. Ultimately, they left without him because of his age. Although the guerillas returned a number of times in the ensuing years and beat his sister for hiding people from them, Bartolo-Diego made it a practice to hide whenever he saw signs of their approach and therefore escaped conscription or additional harm. In August of 1994, Bartolo-Diego relocated to the United States, allegedly because of his constant fear for his life from the threat of the Guatemalan guerillas.

The Department of Homeland Security commenced removal proceedings against Bartolo-Diego pursuant to the Act. Bartolo-Diego conceded to being removable. He submitted an application for asylum, a request for withholding of removal, and a deferral of removal under the United Nations Convention Against Torture ("CAT"). The IJ found that Bartolo-Diego (1) was ineligible for asylum because he had failed to file his application within the statutorily mandated period; (2) did not qualify for a withholding of removal because there was an insufficient nexus between his evidence of past persecution and the statutorily protected classifications and because the political conditions in Guatemala had changed in such a way as to render fear of future persecution objectively unreasonable; and (3) did not qualify for CAT relief because the guerillas were not acting at the behest of or with the acquiescence of the Guatemalan government. The IJ granted Bartolo-Diego the privilege of voluntary departure. The BIA adopted the IJ's reasoning without comment.

## II.

When the BIA summarily adopts and affirms an IJ's decision, we review the IJ's decision directly. Aziz v. Gonzales, 478 F.3d 854, 857 (8th Cir. 2007) (citing Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005)).

### A. Asylum

The BIA and IJ determined that asylum relief was unavailable because Bartolo-Diego did not timely file his asylum application and did not offer testimony in support of an exception from the timely filing requirement. The regulations and law require, in relevant part, that any application for asylum under the Act must be filed within a one-year period commencing on the date of an alien's last arrival in the United States or on April 1, 1997, whichever is later.[1] 8 U.S.C. § 1158(a)(2)(b); 8 C.F.R. § 1208.4(a)(2)(ii) (2005). In the absence of alleged constitutional violations or errors of law, we lack jurisdiction to review the determination that Bartolo-Diego's application was untimely and that no extraordinary circumstances had been presented that might excuse its untimeliness. 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."); Ignatova v. Gonzales, 430 F.3d 1209, 1213-14 (8th Cir. 2005); see also Yakovenko v. Gonzales, 477 F.3d 631, 635 (8th Cir. 2007) (noting that we have limited jurisdiction to review alleged constitutional violations or errors of law for decisions made under § 1158(a)(2)). Bartolo-Diego does not raise any constitutional challenges or questions of law regarding the determination that his application was untimely and that he failed to show that he should be excused from the deadline due to extraordinary or changed circumstances. Accordingly, we lack jurisdiction to review his asylum claim.

---

[1]Bartolo-Diego arrived in the United States in 1994. He had until April 1, 1998, to file for asylum. His application was date-stamped as received on January 8, 1999.

## B. Withholding of Removal

There is no similar one-year requirement for applications for withholding of removal or CAT protection. We therefore have jurisdiction to review the IJ's denial of those grounds for relief. 8 U.S.C. § 1252(a); Mouawad v. Gonzales, 485 F.3d 405, 411 (8th Cir. 2007).

To qualify for withholding of removal, an alien must show a clear probability of persecution in the proposed country of removal on the basis of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.16(b); Mouawad, 485 F.3d at 411. The applicant may make this requisite showing by either: (1) showing past persecution on the basis of a protected ground, thereby "creating a rebuttable presumption that his life or freedom would be threatened upon removal," or (2) establishing that "it is more likely than not that he or she would be persecuted" upon removal based upon a protected ground. Mouawad, 485 F.3d at 411-12 (citing 8 C.F.R. § 1208.16(b)(1), (2)). This is a higher standard than the "well-founded fear of persecution" standard applicable in asylum analysis. Aziz, 478 F.3d at 858. We may not reverse an IJ's findings unless "the evidence not only supports [a contrary] conclusion, but compels it." INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

The IJ found that Bartolo-Diego had not shown that he had suffered harm "on account of" any ground enumerated in the Act. As a matter of law, guerilla attempts to forcibly compel a person to join them, absent additional evidence that the conscription was motivated by that person's political opinion, are insufficient to compel a finding of persecution on account of political belief. Elias-Zacarias, 502 U.S. at 483-84; see also Melecio-Saquil v. Ashcroft, 337 F.3d 983, 986 (8th Cir. 2003) (applying this principle in an asylum claim based on forced recruitment attempts by Guatemalan guerillas). Bartolo-Diego asserts, however, that the guerillas harassed and attempted to conscript him because they imputed to him the political beliefs of his

father.  Assuming, without deciding, that imputed political opinion may satisfy the Act, see Sangha v. INS, 103 F.3d 1482, 1489 (9th Cir. 1997), "since the statute makes motive critical, [Bartolo-Diego] must provide *some* evidence of it, direct or circumstantial."  Elias-Zacarias, 502 U.S. at 483.

Even if Bartolo-Diego's father's death at the hands of the guerillas because of his involvement in the Guatemalan military allows for the possibility that the guerillas might impute the political beliefs of the father to the son, Bartolo-Diego provided no evidence, circumstantial or otherwise, suggesting that they did do so.  See Melecio-Saquil, 337 F.3d at 986 (noting that petitioner failed to prove the guerillas acted because of his teenage membership in Guatemala's civil patrol).  In light of the guerillas' actual behavior toward Bartolo-Diego, we are not compelled to conclude that the IJ was wrong when it found that the guerillas "did not identify the [petitioner] or seek to recruit him because of any political opinion, or punishment for his father's service within the military." A.R. at 43.  "To the contrary, by [petitioner's] testimony, it appears to be clear that [he] was simply targeted as a young man who might be sympathetic to the guerilla cause." Id.  Bartolo-Diego acknowledged that he did not belong to any political party and offered no evidence that he maintained any political opinions.  He testified that, on their first approach, the guerillas honored his refusal to accept their demands that he join them because he was too young. A.R. at 63-64. As the IJ noted, this behavior is entirely consistent with that of a militant group motivated to fill its ranks with able-bodied soldiers.  Cf. Dominguez v. Ashcroft, 336 F.3d 678, 680 (8th Cir. 2003) ("A reasonable fact finder could decide from this record that the guerillas were simply trying to fill their ranks and were not concerned with [petitioner's] political beliefs.").  Accordingly, because the evidence of past persecution does not compel the conclusion that Bartolo-Diego was persecuted based on a protected classification, his petition on this ground must fail.

Nor does the record compel us to conclude that there is a clear probability that Bartolo-Diego will be persecuted on account of a protected classification should he

be removed to Guatemala. According to the State Department's 2001 and 2003 Country Reports on Human Rights in Guatemala, the Guatemalan civil war ended in 1996, and the government signed a peace accord with the guerilla movement that had previously sought Bartolo-Diego's conscription. A.R. at 71 and 94. The same Guatemalan National Revolutionary Unity guerillas that had sought his conscription have since, in fact, met all legal requirements for qualification as a political party, competed in the 1999 general elections, and won nine seats in the Guatemalan congress. A.R. at 113. This record supports the IJ's conclusion that "given [Bartolo-Diego's reliance on] forcible recruitment and the murder of his father [to demonstrate persecution based on imputed political support for the government], the significance of the end of the war is not a minor issue for [him] to contend with. There are significant country condition changes that tend to undercut [his claim]." A.R. at 45. Even though violence and criminality still plague Guatemala, nothing in the State Department reports indicate that those who supported the Guatemalan government before the end of the civil war are targets. Accordingly, because Bartolo-Diego's fear of persecution based on a protected ground is not objectively reasonable, the IJ's determination must be affirmed.

## C. Convention Against Torture

An applicant seeking protection under CAT must establish that it is more likely than not that he or she would be tortured if returned to the proposed country of removal. 8 C.F.R. § 208.16(c)(2) (2005). Torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as . . . punishing him or her for an act he or she or a third person has committed . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1) (2005). We review the factual basis of an IJ's denial of a CAT claim under the same substantial evidence standard we apply to the denial of a withholding of removal claim. Mouawad, 485 F.3d at 413.

Bartolo-Diego contends that he would be subject to kidnapping or attack by guerillas or criminal groups should he return to Guatemala. The IJ denied Bartolo-Diego CAT relief because even if, *arguendo*, Bartolo-Diego was subjected to mistreatment rising to the level of torture at the hands of the Guatemalan National Revolutionary Unity guerillas, those guerillas were attempting to overthrow the government and were not government actors. See Perinpanathan v. INS, 310 F.3d 594, 599 (8th Cir. 2002) (petitioner not entitled to protection under CAT for abuses conducted by an illegal terrorist organization since participants could not be considered government officials). Because the guerrillas at issue have since abandoned their militaristic tactics and have assumed a legitimate and peaceable role within the government, the record does not compel the conclusion that they would, upon his return, torture him.

Even though the government's failure to investigate and punish other individuals and clandestine criminal groups who break the law has resulted in human rights abuses, the failure is due more to a weak and inefficient judicial system than to government acquiescence or approval. A.R. at 95. The current violence in Guatemala at the hands of security forces predominately involves criminal suspects and individuals deemed undesirable, such as gang members and local delinquents. Id. Bartolo-Diego does not contend that he falls within these categories. The country reports do not provide substantial evidence in support of Bartolo-Diego's contention that he would more likely than not be tortured or otherwise victimized by government actors or criminal elements acting with the acquiescence of the government upon his return.

The petition is denied.

_____