# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2083

_____

Herik Purwantono,          *
         *
         Petitioner,      *
         *
     v.                *    Petition for Review of an order
         *    of the Board of Immigration
Alberto Gonzales, Attorney General    *    Appeals.
of the United States of America,      *
         *
         Respondent.     *

_____

Submitted: April 9, 2007
Filed: August 17, 2007

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Herik Purwantono petitions for review of an order of the Board of Immigration Appeals (BIA), which adopted and affirmed the decision of an immigration judge (IJ) denying Purwantono's application for asylum and withholding of removal. Insofar as we have jurisdiction to consider his claims, we deny the petition for review.

Purwantono is a native of Indonesia and a Muslim. His claims for relief rest on his contention that members of a militant Muslim group, Laskar Jihad, subjected him

to persecution, and that they are likely to persecute or torture him if he is returned to Indonesia.

On July 31, 1999, Purwantono arrived in the United States on a non-immigrant crewman visa. He failed to file an application for asylum within the one-year period prescribed by statute, 8 U.S.C. § 1158(a)(2)(B), and he is therefore precluded from seeking asylum unless he meets one of the limited statutory exceptions to the timeliness requirement. Section 1158(a)(2)(D) provides that an asylum application "may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General . . . extraordinary circumstances relating to the delay in filing an application within the one year period." Purwantono contends that he showed "extraordinary circumstances" sufficient to excuse his tardiness. The government responds that we have no jurisdiction to review the BIA's determination that his application was untimely.

As we have recognized, 8 U.S.C. § 1158(a)(3) provides that no court shall have jurisdiction to review a determination of the Attorney General that an applicant has failed to demonstrate extraordinary circumstances relating to the alien's delay in filing an application for asylum. *Ismailov v. Ashcroft*, 263 F.3d 851, 855 (8th Cir. 2001). There is a statutory exception to this jurisdictional bar in section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 323, which provides that § 1158(a)(3) shall not "be construed as precluding review of *constitutional claims or questions of law* raised upon a petition of review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D) (emphasis added).

We look to the nature of the argument advanced in the petition to determine whether an alien is raising a constitutional claim or question of law, over which we have jurisdiction, or asserting a dispute with the BIA's factual findings or discretionary judgments, which are insulated from judicial review. *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 332 (2d Cir. 2006). Here, Purwantono argues that

his poor understanding of English and ignorance of the asylum procedures constitute "extraordinary circumstances" that should excuse his untimely filing. These contentions amount to a quarrel with the BIA's discretionary factual determination. Whatever the precise scope of the "constitutional claims or questions of law" under the terms of the REAL ID Act, the statute's conferral of jurisdiction does not extend to review of the agency's findings of fact or its discretionary decision that extraordinary circumstances have not been demonstrated to the "satisfaction" of the BIA. *Yakovenko v. Gonzales*, 477 F.3d 631, 635 (8th Cir. 2007); *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005). Accordingly, we lack jurisdiction to review the BIA's decision that Purwantono had not demonstrated a satisfactory reason to file an application for asylum outside the one-year time limit.

To the extent Purwantono argues that the statutory time limit on applications for asylum cannot be enforced because it conflicts with the United Nations Convention Relating to the Status of Refugees, we do have jurisdiction to address this question of law, but the argument is without merit. The United States acceded to the Refugee Protocol in 1968, and thereby undertook obligations under the Convention. The Protocol, however, is not self-executing, *INS v. Stevic*, 467 U.S. 407, 428 n.22 (1984); *Sukwanputra v. Gonzales*, 434 F.3d 627, 632 (3d Cir. 2006), and it is "not judicially enforceable law in the United States." *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003). The statutory time bar, moreover, was enacted in 1980 after the United States signed the Convention in 1967, so the statute would take precedence in any event, under "the last in time" rule. *Sukwanputra*, 434 F.3d at 632 n.3; *see Breard v. Greene*, 523 U.S. 371, 376 (1998) (per curiam).

We also have jurisdiction to review the IJ's determination that Purwantono is ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3). To obtain relief under this provision, an alien must establish that it is more likely than not that he would be persecuted upon return to his native country on account of race, religion, nationality, membership in a particular social group, or political opinion. *Stevic*, 467

U.S. at 429-30; 8 C.F.R. § 1208.16(b). The IJ's decision will be upheld unless the evidence on the record considered as a whole compels the conclusion that the alien has established a likelihood of persecution. 8 U.S.C. § 1252(b)(4); *Bartolo-Diego v. Gonzales*, No. 06-1642, 2007 WL 1827479, at *2 (8th Cir. June 27, 2007).

We conclude that the IJ reasonably rejected Purwantono's claim for withholding of removal. His allegations of past persecution are limited to a few encounters with members of Laskar Jihad, in which they pressured him to join their group. After Purwantono refused them a second time, members of the group struck him on the head with a stick and knocked him unconscious. He required sixteen stitches as a result of the incident. Purwantono testified that since then, his family has reported further recruiting attempts by Laskar Jihad near his hometown, including an attempt to recruit his brother. The IJ noted a decline in activity by Laskar Jihad activity since Purwantono's departure from Indonesia, and observed that the group stated publicly that it was disbanding.

The IJ concluded that the efforts of Laskar Jihad to recruit Purwantono did not constitute persecution on account of a protected basis under the Immigration and Naturalization Act. The record does not compel a contrary conclusion. "[F]orced recruitment is not persecution; the petitioner must show that the recruitment was based on one of the five enumerated criteria in [8 U.S.C.] § 1101(a)(42)(A)." *Rodriguez v. Gonzales*, 441 F.3d 593, 595 (8th Cir. 2006). In *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), for example, the Supreme Court held that forced recruitment by guerillas in Guatemala did not constitute persecution on account of political opinion. *Id.* at 482. The Court explained that an alien seeking asylum or withholding of removal must show "that the guerillas will persecute him *because of* that political opinion, rather than because of his refusal to fight with them." *Id.* at 483. Here, there was no evidence that Purwantono was targeted by Laskar Jihad for recruitment or assault

because of *his* political opinion, and the IJ's rejection of the claim for withholding of removal on that basis was supported by substantial evidence.[1]

In rejecting Purwantono's claim for relief under the Convention Against Torture (CAT), the IJ concluded that Laskar Jihad is not a governmental organization, and that because the government of Indonesia has taken action against militant Muslim organizations, it could not be said that any violence by Laskar Jihad was undertaken with the consent or acquiescence of the government. The IJ also believed that the evidence was insufficient to show that it is more likely than not that Purwantono would face torture if he was returned to Indonesia. The IJ found that internal relocation within Indonesia, "a large and heavily-populated country," was a "very realistic possibility" for Purwantono, and cited the disbanding of Laskar Jihad as a "changed circumstance" that reduced the likelihood that anyone associated with the organization would attempt to recruit or harm him.

The IJ's ultimate conclusion is supported by substantial evidence on the record as a whole. To obtain relief under the CAT, an alien must show it is more likely than not that he would be tortured if returned to his native country. 8 C.F.R. § 208.16(c)(2). Torture is "an extreme form of cruel and inhuman treatment intentionally inflicted by or with the acquiescence of a person acting in an official capacity." *Samedov v. Gonzales*, 422 F.3d 704, 708 (8th Cir. 2005) (internal quotation omitted). While Purwantono suffered one beating and other harassment at the hands of Laskar Jihad while in Indonesia, the record supports the IJ's findings that the Indonesian government has taken action against militant Muslim organizations, and that the activities of Laskar Jihad have declined in recent years. The State

---

[1]On this petition for review, Purwantono contends that he was persecuted by Laskar Jihad because of his membership in a "particular social group," *i.e.*, "individuals unwilling to join a terrorist organization." (Pet'r Br. 25). We do not consider this claim, because it was not raised before the IJ or the BIA. *Etchu-Njang v. Gonzales*, 403 F.3d 577, 583 (8th Cir. 2005).

Department's 2003 Report on religious freedom in Indonesia explained that Laskar Jihad officially disbanded in October 2002. Accordingly, the evidence does not compel a conclusion that the government of Indonesia would acquiesce in torture by Laskar Jihad against Purwantono in the future.

*   *   *

For the foregoing reasons, the petition for review is denied.

_____